## Wolbach *et ux. versus* The Lehigh Building Association.

The provisions of the fourth and sixth sections of the Act of April 12th 1859, relating to building associations, do not apply to borrowers who are not members of the association, or who are not *sui juris* and incapable of acquiring membership therein, and where, therefore, a married woman gives a mortgage to one of these associations to secure the payment of a loan, together with fines, premiums and dues, the association can only recover from her the amount actually loaned, with legal interest, and this notwithstanding the amount received by her was expended in the improvement of her separate estate.

March 28th 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Northampton county :* Of January Term 1877, No. 161.

This was a scire facias sur mortgage issued by the Lehigh Building Association against Peter Wolbach and Catharine his wife.

The building association was incorporated under the Act of April 12th 1859, Purd. Dig. 183.

Catharine Wolbach owned a lot near Easton, Pennsylvania. She borrowed $1300 from the building association, and on the 29th of October 1874 executed jointly with her husband a bond and a

[Wolbach *v.* The Lehigh Building Association.]

mortgage upon this lot to secure the payment, as conditioned in the mortgage, of $1800, with legal interest from the 20th of October 1874. She subscribed at the same time for nine shares of the stock of the association, upon which, by the terms of the charter and by-laws, monthly payments were to be made. She made default in the payment of the fines, dues and interest, and this scire facias was then issued.

The affidavit of claim set forth that this suit was founded upon a mortgage given to secure the payment of money borrowed from plaintiff by Mrs. Wolbach for the improvement of her separate estate, the title to which was at the time and still is in her name; that the money so borrowed was actually applied to the improvement so owned by Catharine Wolbach and bound by this mortgage; that the said Catharine Wolbach and Peter Wolbach her husband, did "suffer and allow the monthly dues of $9 per month, due on the nine shares of stock standing in the name of Catharine Wolbach on the books of the association, and by her transferred to the said association as collateral security for the re-payment of the amount due thereon, to be and remain due and unpaid for the space of six months," before bringing this suit, and did also "suffer and allow the interest on the sum of $1800, the amount secured by this mortgage, being due monthly by the provisions of said mortgage, to be and remain due and unpaid for the space of six months" before bringing this suit. And did further "suffer and allow the fines imposed in accordance with the constitution and by-laws of said association, the amount of which appeared by an exhibit annexed, to be and remain unpaid for the space of six months," before bringing this suit, by reason of which this said mortgage became due and payable immediately; and the said nine shares so as aforesaid held by the said Catharine Wolbach, were, by the said association, plaintiff above named, declared forfeited on the 28th day of March A. D. 1876; that the said defendants are entitled to be credited with the payment of the sum of $266.90, the amount paid to the association on account of fines, dues and interest, to be paid according to the terms of said mortgage; that there is now due and unpaid from these defendants to said plaintiff the amount of said mortgage, to wit, the sum of $1800, the further sum of $477.01 due for fines, dues and interest, at the time of bringing this suit, upon which the said defendants are entitled to a credit of $266.90 paid to the said plaintiff on account of the dues, fines and interest as aforesaid, imposed according to the provisions of the constitution and by-laws of the said association.

The association, therefore, claimed $2010.11, as the amount due.

Wolbach and his wife, in an affidavit of defence, averred that the mortgage was given to secure the payment of money loaned to the defendants, and that the sum loaned and received by the defendants was $1300, that there had been paid by defendants to plaintiff, on account of said loan, $266.90, and that there is only due, therefore,

[Wolbach v. The Lehigh Building Association.]

to plaintiff the balance of said $1300 and interest less the above sum.

The court granted a rule to show cause why judgment should not be entered for the full amount of the mortgage, notwithstanding the affidavit of defence, which rule was made absolute, and judgment was entered in favor of plaintiff for $1932.56, being for $1800, the amount of the mortgage with interest and costs, less the amount paid on account of interest.

This entry of judgment was the error assigned.

*Edward J. Fox,* for plaintiffs in error, contended, that being a married woman, Mrs. Wolbach could not make a contract with a building association to pay dues and fines, and that she was consequently liable to pay only the amount loaned with interest, and cited in support of this contention : Glyde *v.* Keister *et al.,* 8 Casey 87 ; Caldwell *v.* Walters, 6 Harris 81 ; Mahon *v.* Gormley, 12 Id. 82 ; Magaw *v.* Stevenson, 1 Grant 404.

*Henry W. Scott,* for defendant in error.—If the contract of the defendants with the association was good for the amount of money actually received, and which was applied to the improvement of the estate of Mrs. Wolbach, the excess, representing the premium paid and the interest upon the whole, is expressly provided for by Act of April 12th 1859, Pamph. L. 544 : " No *premiums,* fines or interest on such premiums that may accrue to said corporation, according to the provisions of said act, shall be deemed usurious ; and the same may be collected as like amounts are now by law collected in the Commonwealth :" Jarrett *v.* Cope, 18 P. F. Smith 67 ; Selden *v.* Building Association, 2 Weekly Notes 481. In the latter case the precise point at issue here was decided ; for there the mortgage was given by husband and wife.

A married woman may encumber her separate estate by a mortgage for its improvement, and make a contract for its improvement, and borrow money for the purpose, if, in fact, the money is actually so applied : Heugh *v.* Jones, 8 Casey 433 ; Murray *v.* Keyes, 11 Casey 384 ; Lippincott *v.* Hopkins, 7 P. F. Smith 328 ; Wightman's Appeal, 5 Casey 282–3 ; Lippincott *v.* Leeds, 1 Weekly Notes 230 ; Barto's Appeal, 5 P. F. Smith 386.

In Black *v.* Galway, 12 Harris 18, it is held that a married woman may mortgage her separate property for debts of her husband, and may covenant for a writ of scire facias immediately upon default.

In Glass *v.* Warwick, 4 Wright 140, a married woman had given her bond and mortgage for purchase-money. In the bond, it was conditioned that " the principal should be collected as fully due upon

default made for six months in payment of interest;" and it was held that the contract was good.

Where the conditions or waivers are part of the contract itself, and of the consideration, a married woman is bound; this principle is supported also by Miner *v.* Graham, 12 Harris 491; Patterson *v.* Robinson, 1 Casey 82.

Mr. Justice STERRETT delivered the opinion of the court, May 7th 1877.

The mortgage in this case having been executed by the plaintiffs in error and duly acknowledged in the form prescribed by the Act of Assembly, it cannot be questioned that it is, in form, a valid pledge of the separate property of the wife; but it is contended that under the admitted facts the mortgagee is not entitled to recover the full amount of the mortgage debt. The question then is, whether the defendant in error is entitled to recover the whole or only a portion of the debt.

The supplemental affidavit of claim and recitals in the mortgage show that it was not intended as security for the debt of the husband for money loaned to him; on the contrary, it is distinctly averred that it was given to secure a loan to the wife for the improvement of her separate estate, and that it was so applied. It appears that she undertook, as a member of the association, to borrow, on her stock, the amount authorized by the charter; and, according to the affidavit of defence, the net amount received was $1300. The bond secured by the mortgage is conditioned for the payment of $1800 with interest monthly until each share of stock shall be worth $200, at which time the principal will be due and payable; with the proviso, that if she suffers the monthly payments of interest on the loan, or the monthly dues on the stock, or the fines, imposed in accordance with the constitution and by-laws of the association, to be and remain unpaid for the space of six months, then and in either event the principal shall become due and payable immediately. By assuming to become a member of the association she undertook to pay the monthly dues on her stock and subject herself to the payment of fines; and when she procured the loan she further undertook to pay, or, what is the same thing, allow the association to retain and deduct, from the nominal loan, the bonus of $500, and to pay interest on the whole. In addition to this she assigned her stock as collateral security for the monthly dues. To sum up the result of the transaction in its financial aspect, she became connected with the association in October 1874; received from it $1300; paid in on account of fines, dues and interest, $266.90; and when suit was brought in April 1876, after her stock had been forfeited to the association, she was still indebted, according to the affidavit of claim, in the sum of $2010.11.

From the facts thus briefly stated, the connection of Mrs. Wol-

[Wolbach v. The Lehigh Building Association.]

bach with the transaction out of which the mortgage arose, and the purpose for which it was given, are readily understood. It must be manifest that it was intended to secure the performance of her undertaking as a shareholder and debtor of the association. It cannot be pretended, simply because her husband is a party to the bond, that the mortgage was given to secure his individual indebtedness. It is not claimed that he received any of the money. All that was paid was received by her and applied to the improvement of her separate estate. His relation to the bond is not that of principal, but rather in the nature of surety for her. Regarding the mortgage then as a security for the undertaking of the wife as a shareholder and debtor of the Building and Loan Association, how far has it the right to enforce the security against her separate property ? It will not be questioned that it may do so to the full extent of her liability, legal or equitable, but beyond this it has no right to go. The questions then arise, what was the extent of the wife's indebtedness, how far was it competent for her to bind herself, and to what extènt did she make herself liable by assuming to become a member of the association and afterwards a borrower on the terms and conditions above indicated ? The principles of law in relation to the power of a *feme covert* to make contracts and incur liabilities must furnish the answer to these inquiries. In general, she is incapable of contracting debts and incurring liabilities. Her capacity and liability are exceptional, and whoever seeks to charge her or her separate estate must bring his case within one of the exceptions. Some of these exceptional cases have their foundation in the Act of 1848 ; others arise by necessary implication from her right to own, use and enjoy her separate property. While the Act of 1848 was a great innovation upon the common law, "its purpose was to secure the wife in the use and enjoyment of her separate property, not to enable her to make contracts she could not have made before. There is nothing in it which expressly removes her common law disability to contract," unless it be in the provision which authorizes her to purchase necessaries for the use of herself and family, and thus render her separate estate liable for the claim, in case it cannot be collected from her husband: Brunner's Appeal, 11 Wright 73 ; but her separate estate cannot be charged for necessaries furnished upon the joint contract of herself and husband ; Berger v. Clark, 29 P. F. Smith 343. If, in purchasing land, she gives a judgment bond, or a mortgage executed by herself, to secure the purchase-money, the land alone is bound, while she herself incurs no personal liability : Patterson v. Robinson, 1 Casey 82; Glass v. Warwick, 4 Wright 145. In such cases the securities against the land are upheld and enforced on equitable grounds, to prevent the gross injustice of permitting her to withhold the price and retain the land. When it is

necessary for the preservation and enjoyment of her separate estate she may, from the very nature and exigency of the case, contract for its repair and improvement : Lippincott *et ux. v.* Hopkins, 7 P. F. Smith 328; Lippincott *v.* Leeds, 27 Id. 420; but, her bond given for such a debt is void; nor is she liable for money borrowed or a debt contracted for the avowed purpose of improving her separate estate unless it is shown that the money or material has been so applied : Heugh *v.* Jones, 8 Casey 432.

These cases, and many others that might be cited, clearly show, as remarked by the chief justice in Berger *v.* Clark, *supra*, that the endeavor of this court has been to so construe the act as to advance its true purpose, and not to make the wife's condition less favorable by an interpretation that endangers her real interests. " Hence, in interpreting the special clauses relating to the debts for which she may be held liable, the cases show that they have been so construed as to limit them strictly to the purpose of protection, and not loosely so as to expand her contract capacity and liability." The whole course of decisions on the subject shows that this rule of construction has been rigidly adhered to, and it would be a wide departure from it, indeed, to hold that a married woman may assume liabilities such as were undertaken in this case. Mrs. Wolbach's contract engagements with the association, to which we have already referred, are entirely outside of the principles on which any of the exceptional cases rest. To hold otherwise would be to greatly expand the contract capacity and liability of the wife, and instead of being a protection to her interests would prove to be a snare. The present case is an illustration of the disastrous consequences to which it would lead. In less than three years after she became a member, we find the association seeking to enforce against her separate estate a claim for over $2000, the net consideration for which was but little over half that sum. We might with equal propriety hold that she could unite with others in entering into a contract to build a railroad, or any other adventure or speculation, and pledge her separate property for the payment of her portion of the outlays and losses.

From what has been said we are justified in concluding that Mrs. Wolbach was incapable of incurring the liabilities she undertook to assume by becoming a member of the association; but it does not follow that she is wholly exempt from all responsibility under the mortgage. Having received, for the purpose of improving her separate estate, the sum of $1300, which was applied to that object, her separate property is liable, on the principles above stated, for this amount and interest thereon, less the payments made by her.

It may be claimed that, inasmuch as the premiums, fines and interest on premiums are by the Act of 1859 not deemed usurious,

[Wolbach *v.* The Lehigh Building Association.]

she is also liable for these. This would be so, perhaps, if she were *sui juris* capable of acquiring membership and assuming the obligations incident thereto. If she was incapable, as we hold she was, by reason of coverture, she could not be liable. The provisions of the law under which the defendant in error was incorporated show that such associations are not chartered for the purpose of loaning money generally. It is a mistake to suppose that they have any such power. The fourth section of the Act of 1859 makes it their duty to offer, at stated times, the money in the treasury, and loan it in open meeting to the stockholder who shall bid the highest premium; and, in declaring that premiums and fines shall not be deemed usurious, the act evidently refers to those paid by members only. It was intended to regulate the dealings between them and the association, and not between it and those who are not members or incapable of acquiring membership.

      The judgment is therefore reversed and *procedendo* awarded.

MERCUR, J., dissented.