# Merchants' Bank of Easton *versus* Shouse, Administratrix.

A stockholder of the Merchants' Bank of Easton died indebted to the bank and insolvent. After his death the bank went into liquidation and declared a pro rata distribution of its assets to its stockholders. The bank claimed to retain the amount appropriable to said decedent's stock, on account of said indebtedness:

*Held,* that said bank had not that right, either under its special charter, or under the general Banking Act of 1850, or by way of lien or set-off.

*Held,* therefore, that the decedent's administratrix was entitled to receive said amount for administration and distribution to the creditors of the decedent's estate.

March 5th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN J., did not sit.

ERROR to the Court of Common Pleas of *Northampton county:* Of January Term 1883, No. 111.

Amicable action between Catharine H. Shouse, administratrix of the estate of John Shouse, deceased, plaintiff, and the Merchants' Bank of Easton, defendant.

A case stated was filed, setting forth the following facts:

The Merchants' Bank of Easton was incorporated by a special Act of the legislature, approved March 14th 1871 (P. L.

350), the business of which was to receive money on deposit at interest, and to invest the same. The Act of incorporation was made part of the case stated. The said bank conducted for several years a banking business, but issued no circulating notes for money.

John Shouse died intestate and insolvent September 19th 1879, and letters of administration on his estate were granted to the plaintiff. At the time of his death he owned 556 shares of the capital stock of said bank, which are now held by the plaintiff, said shares standing in the name of the intestate on the books of the bank. At the time of John Shouse's death he was indebted to the bank, upon notes discounted by the bank, in a sum exceeding $10,000, a large part of which indebtedness remains due and unpaid.

Since the death of said Shouse, the bank went into liquidation, and made a pro rata division of its assets among its stockholders, being two dollars per share, the amount appropriable to Shouse's stock being $1,112.

The bank claims the right to retain this sum as payment or set off, on account of John Shouse's indebtedness to the bank.

If the court be of opinion that the bank has not that right, judgment to be entered for the plaintiff, for said sum, otherwise judgment to be entered for the defendant.

The court, in an opinion by SCHUYLER, J., entered judgment for the plaintiff on the case stated, whereupon the defendant took this writ of error, assigning for error the said judgment.

*Reeder & Reeder*, for the plaintiff in error.—1. The general banking Act of April 16th 1850 (P. L. 478), provided that " every banking corporation hereafter created by special Act of the General Assembly . . . shall be subject to the provisions of this Act." Hence the special Act of 1871, incorporating this bank, which is in no particular inconsistent with the provisions of the general Act of 1850, must be read in connection with that Act, and both together constitute the charter of the Merchants' bank. The general Act provided for two classes of banks, viz.: (1) banks of issue, and (2) banks not of issue, or savings banks. This bank falls under the first class. It is true no express power was given in the special Act to issue circulating notes, but such power is derived from the general Act. In none of the special charters incorporating banks since the Act of 1850, is such power specially given, but it is derived from the general Act. See the following special Charters :

Farmers' & Mechanics' Bank of Easton, P. L. 1851, page 355.
Allentown Bank, P. L. 1855, page 545.

[Merchants' Bank of Easton *v.* Shouse.]

Anthracite Bank, P. L. 1855, page 156.
City Bank of Philadelphia, P. L. 1855, page 150.
Consolidation Bank of Philadelphia, P. L. 1855, page 224.
Lock Haven Bank, P. L. 1855, page 573.
Bank of New Castle, P. L. 1855, page 558.
Mauch Chunk Bank, P. L. 1855, page 558.
Mechanics' Bank of Pittsburgh, P. L. 1855, page 149.
Bank of Beaver County, P. L. 1857, page 804.
Allegheny Bank, P. L. 1857, page 435.
Bank of Catasauqua, P. L. 1857, page 447.
Bank of Chester Valley, P. L. 1857, page 363.
Commonwealth Bank of Pennsylvania, P. L. 1857, page 396.
Iron City Bank, P. L. 1857, page 516.
Jersey Shore Bank, P. L. 1857, page 494.
Lebanon Valley Bank, P. L. 1857, page 575.
Central Bank, P. L. 1857, page 413.
Bank of Pottstown, P. L. 1857, 516.
Stroudsburg Bank, P. L. 1857, page 799.
Tioga County Bank, P. L. 1857, page 506.
Union Bank of Philadelphia, P. L. 1857, page 405.
Union Bank of Reading, P. L. 1857, page 399.
Oil City Bank, P. L. 1864, page 952.

The special charters of all mere savings banks or banks of deposit, chartered after the general Act of 1850 (and before the National Banking Act of 1863), contained special prohibitions against issuing notes as money. There is no such prohibition in the special Act incorporating this bank. It is, therefore, a bank of issue, by virtue of the Act of 1850. The tenth section of that Act gives to such banks the right to retain the stock or dividends of any debtor stockholder, until his indebtedness be paid. This bank, therefore, was entitled to retain Shouse's stock, and the pro rata amount awarded thereon until his indebtedness was paid.

2. But, independently of the statutory right given by the Act of 1850, the bank has the right so to retain said sum, by way of set-off. Bank stock is a chose in action, the certificates being mere prima facie evidence of the holder's interest in the corporation; in a suit thereon the bank is entitled to show what the holder's interest in the corporation is, viz: the value of his proportionate share of the assests, less his indebtedness to the bank: Slaymaker *v.* Bank, 10 Barr 373. This principle extends to stock in the hands of an administrator, or executor, where the decedent's debt to the bank existed as a complete cause of action at the time of his death, but not where the debt matured after his death, and after the chose in action represented by the stock had vested in the executor, free from the

[Merchants' Bank of Easton v. Shouse.]

bank's lien or right to set off the indebtedness. The insolvency of the decedent's estate does not change this rule: Light v. Leininger, 8 Barr 403 ; Bosler v. Exchange Bank, 4 Barr 32 ; Appeal of F. & M. Bank, 12 Wr. 57 ; Jordan v. Sharlock, 3 Norris 366; Dorsheimer v. Bucher, 7 S. & R. 9; Kensington Nat. Bank v. Shoemaker, 11 W. N. C. 215.

*James W. Wilson* (*Henry W. Scott* with him), for the defendant in error, contended that the Merchants' Bank of Easton was not a bank of issue, and therefore the right of lien given by the tenth section of the Act of 1850 did not apply to it ; and that, the distribution not having been declared until after the decedent's death, the stock vested at his death in the plaintiff, his administratrix, free from any right of lien or set-off on the part of the bank : Steamship Dock Company v. Herron's Adm'x, 2 P. F. S. 280.

Mr. Justice Gordon delivered the opinion of the court, April 16th 1883.

According to the case stated, which we have before us, John Shouse, at the time of his decease, was the owner of some 556 shares of the capital stock of the Merchants' Bank of Easton, the defendant below, and it also thereby appears that to this institution he died largely indebted. These shares represented his interest in the bank and its assets, and were, to all intents and purposes, personal property, which, after his death, passed to the plaintiff as part of his estate.

It does not appear that, prior to the time of his decease, the bank, which was, as is alleged, in process of liquidation, had converted any part of its corporate assets, represented by the said stock, into money, and applied it on Shouse's indebtedness; at all events, the dividends which form the subject of the present contention, were declared after his death. Such being the case, unless before that time the bank had a lien upon that stock, it could have none afterwards which would be superior to that of the other creditors of this insolvent estate. In other words, if this stock passed to the administratrix unincumbered by any lien of the bank, it must necessarily follow that she, as trustee of the general creditors, must be regarded as the owner of the money realized by its conversion, and, as such, be entitled to its custody. This view of the case would negative the bank's alleged right of set off, since its claim on the fund could rise no higher than that of any other creditor. In fact, this position does not seem to be disputed, for the argument for the plaintiff is based wholly on the ground of a supposed lien upon the stock, and it is said that this lien was given by the 10th section of the Banking Act of April 16th 1850.

[Merchants' Bank of Easton *v.* Shouse.]

But as that Act applies only to banks of issue ; as it does not embrace mere savings institutions, such as the defendant, the argument based on this premise is fallacious. If subsequent legislative construction is of any value, we have it in the first section of the Act of November 6th 1856, which, whilst it extends a single section, the 30th of the statute above recited, to savings fund and other companies, very carefully excepts the power to issue bank notes.

It would thus seem that the general assembly of 1856 was not only under the impression that institutions of this kind did not come within the Act of 1850, but was also careful that they should not, by any implication, be brought within it, except so far only as that part of the section mentioned was concerned.

But upon this part of our subject we need not dwell, for an examination of the defendant's charter will at once show that by it the legislature conferred no such right as that contended for. This charter is, in itself, full and complete ; it refers to no other act, and it is therefore idle to rummage other statutes for powers that the legislature never intended should belong to this institution.

Neither can we entertain the idea that the defendant had a common law lien upon Shouse's stock. Corporations are not the creatures of common law. Such a thing as a common-law corporation is wholly unknown to the laws of Pennsylvania, hence these artificial bodies can have no common-law rights, except as such rights may become incidental to the proper execution of the legislative grants by which such bodies are created. But when for a corporation a distinct power, or right, is claimed, as in the present case, such claim must have for its foundation some statutory grant, or it has no validity. Moreover, the case of the Steamship Dock Company *v.* Herron, 2 P. F. S. 280, cited in the learned and able opinion of the court below, in terms rules that there is no such thing as a common law lien on stock, in favor of a corporation, for a debt due it by a shareholder.

The judgment is affirmed.