Statement of Facts.

## J. M. DREISBACH ET AL. v. M. PRICE ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF CARBON COUNTY.

Argued March 14, 1890—Decided March 24, 1890.
[To be reported.]

1. The provisions of the act of April 16, 1850, P. L. 477, prescribing a special proceeding to enforce the personal liability of stockholders of banks, apply only to banks of issue; and, therefore, a bill in equity can be maintained by the assignee for the benefit of creditors of a bank not of issue, to enforce a statutory liability for its debts imposed upon the stockholders by the special act of incorporation.

2. Under a charter providing that the stockholders of a bank shall be individually responsible, equally and ratably, and not one for another, for all its debts, "to the extent of double the amount of the stock subscribed for or held by them," a stockholder is liable directly to the creditors to the extent of double the par value of his stock, in addition to his liability to the corporation for any stock subscribed and not paid for.

3. An individual liability to the creditors of a corporation, imposed by its charter upon the stockholders, being purely statutory and arising from no contractual relation but solely from the possession and ownership of the shares of stock, a married woman who holds stock in such corporation takes it cum onere, and is subject to this responsibility notwithstanding her coverture: Wolbach v. Building Ass'n, 84 Pa. 211, distinguished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 282 January Term 1890, Sup. Ct.; court below, No. 1 January Term 1888, C. P. in Equity.

On January 6, 1888, J. M. Dreisbach, assignee for the benefit of creditors of the Miner's Bank of Summit Hill, and the second National Bank of Mauch Chunk, a creditor of said Miners' Bank, filed a bill in equity against Morgan Price and about sixty others, averring that the Miners' Bank of Summit Hill, incorporated by act of April 10, 1873, P. L. 674, had become insolvent and assigned all its property to the plaintiff Dreisbach for the benefit of its creditors; that the defendants were stockholders therein, and as such were by law made individually responsible for the debts of the bank to the extent

of double the amount of their stock, and that for the payment of the debts of said bank it was necessary to make an assessment upon the stockholders of $50 per share; asking that the bill be treated, either as the bill of the assignee for the benefit of creditors, or as that of the Second National Bank of Mauch Chunk, suing for all the creditors, or as the bill of both, as the court should decide to be proper in the premises; and praying for discovery, for a decree against the defendants for the payment to said assignee of $50 for each share of stock held by them, and for general relief.

To this bill certain of the defendants appearing demurred, specifying as causes of demurrer that the complainants had an adequate remedy at law under the act of April 16, 1850, P. L. 477, and that the assignee for the benefit of creditors had no right to file and maintain the bill.

After argument the court DREHER, P. J., overruled the demurrer, filing an opinion in part as follows:

The defendants contend that the Miners' Bank is subject to the general act of April 16, 1850, and therefore the proceedings against the stockholders should be in the form prescribed by the thirty-second and thirty-third sections of that act. We decided in 1883, in this very assignment: Miners' Bank's Est., 13 W. N. 370, that this bank was not subject to the act of 1850, it not being a bank of issue. We so decided on what we understood to be the law as declared by the Supreme Court in First N. Bank v. Gruber, 87 Pa. 468, and Fox's App., 93 Pa. 416; and we still think we were then right, notwithstanding the very able opinion of Judge Thayer in the case of the Shackamaxon Bank, 4 Pa. C. C. R. 194.

The question is, what remedy shall the creditors have to enforce the personal liability of the stockholders? In Craig's App., 92 Pa. 396, the charter of the bank was very similar to that of the Miners' Bank of Summit Hill. There, an auditor, in distributing the fund in the hands of the assignee, allowed claims of stockholders, creditors of the bank. To this the other creditors, not stockholders, objected that the stockholders as creditors should not be permitted to participate in the distribution of the fund until the other creditors were fully paid. Exceptions to the auditor's report were dismissed, the court below

(affirmed by the Supreme Court) holding that the liability of stockholders was not that of sureties, but special and sub modo only. In referring to the liability of the stockholders to contribute a ratable share of the debts of the bank, Mr. Justice GORDON says : " It is asked, how is this contributory share to be ascertained, apportioned or enforced? We answer, either by process analogous to that prescribed for the benefit of note holders, in the thirty-second and thirty-third sections of the banking act of 1850, or by a bill in equity ; but, however this may be, one thing is certain; that is, that an auditor has no such power. It is not his business to estimate the value of the property of the bank and apportion the deficit among the stockholders ; that power is by law committed to the assignee."

As I understand this opinion, the assignee of a bank, not of issue, is the proper party to enforce the personal liability of the stockholders for the benefit of the creditors of the bank, and that as the special act creating such bank, does not prescribe any special remedy, such personal liability of the stockholders may be enforced in equity, and I see no objections to the joinder of the Second National Bank of Mauch Chunk as a plaintiff. That bank is interested as a creditor of the Miners' Bank, and sues as well for the benefit of other creditors as for itself.

In Means's App., 85 Pa. 75, the proceeding was by a bill in the Common Pleas of Franklin county, by creditors against the stockholders of the bank. It was said that the assignee should be a party to any proceedings to enforce the personal liability of the stockholders, though the bill was dismissed for the reason that the Court of Common Pleas of Cumberland county had exclusive jurisdiction. It is to be noticed, however, that the special act incorporating the Farmers and Mechanics Bank of Shippensburg, expressly provided that the bank should be subject to the provisions of the several acts regulating banks, as far as they were applicable thereto.

And now to wit: June 11, 1888, the demurrer of defendants to plaintiffs' bill is overruled.[1]

Thereupon the defendants answered the bill, and issue having been joined, the court appointed *Mr. Horace Heydt,* examiner and master, who subsequently reported the following :

1. That J. M. Dreisbach is the assignee for the benefit of the

creditors of the Miners' Bank of Summit Hill, and that the
Second National Bank of Mauch Chunk, Pa., is a creditor of
the said Miners' Bank of Summit Hill.

2. That the Miners' Bank of Summit Hill is a corporation
created under the laws of the state of Pennsylvania, with its
office at Summit Hill, Carbon county, with authority to receive
deposits, make discounts, and to buy and sell commercial paper,
etc., but with no authority to issue notes, as appears by act of
the general assembly, approved April 10, 1873, P. L. 674, by
the name of the Miners' Savings Bank of Summit Hill, which
name was subsequently, by legal proceedings, changed to the
Miners' Bank of Summit Hill, and the office was removed to
Lansford, Pa.

3. That the said Miners' Bank of Summit Hill became in-
solvent on April 9, 1883, and suspended payment on that day
by resolution of the board of directors.

4. That on April 26, 1883, the said Miners' Bank of Summit
Hill, executed and delivered to J. M. Dreisbach a general as-
signment of all its property, real and personal, and rights, for
the benefit of the creditors of the said Miners' Bank of Sum-
mit Hill, which assignment was at once recorded according to
law, and the said J. M. Dreisbach, assignee, entered upon the
execution of said trust.

5. That the following persons, each holding the number of
shares opposite his name, were stockholders of the said Miners'
Bank of Summit Hill, at the time when the said Miners' Bank
of Summit Hill became insolvent : . . . . .

6. [That by the charter of the said Miners' Bank of Summit
Hill, it is provided that the stockholders of said bank shall be
individually responsible, equally and ratably, and not one for
another, for all contracts, debts, and engagements of said bank,
to the extent of double the amount of the stock subscribed for
or held by them, and that this means that the stockholders shall
be responsible to the extent of double the amount of their stock,
after their stock is fully paid up to the bank.] [6]

7. That the said J. M. Dreisbach, assignee as aforesaid, has
collected all the assets of the said bank, which are collectible as
far as he can ascertain, and has filed his account in the Court
of Common Pleas of Carbon county, which account has been
confirmed absolutely. That an auditor has been appointed to

distribute the balance in the hands of the assignee, and he has ascertained the indebtedness of said Miners' Bank of Summit Hill, with interest to November 14, 1887, to be $48,554.58, and the fund applicable to the payment of said indebtedness to be $5,680.84, leaving a deficiency of $42,873.74 which there are no assets to pay. . . . .

8. [That at the time when the said Miners' Bank of Summit Hill became insolvent and made said assignment, there had been issued and outstanding, according to the books of said bank, 1000 shares of stock of the par value of twenty-five dollars each, and that the holders of these shares are liable by law for all the debts of said Miners' Bank, to an amount equal to double the par value of such shares.] [7]

9. [That an assessment to the amount of $46,298.31 must be made upon the stockholders of said Miners' Bank of Summit Hill, being $46.30 per share, for the purpose of paying the debts of said bank, and accrued interest, expenses of settlement, etc.; each stockholder, except Mrs. Mary Treasure, Mrs. Mary McGee, B. S. Erwin, administrator of Mary F. Dimmick, Hannah B. Neigh and Matilda Houston, being liable for the number of shares and amount opposite his name as per the following schedule :] [8] . . . . .

10. The master finds from the testimony that Hannah B. Neigh, Mary F. Dimmick, Matilda Houston, Mary Treasure and Mrs. Mary McGee were stockholders and married women at the time of the insolvency of the bank, and in consequence of such coverture are not liable for the debts of the bank.

It was contended before the master that John Allen, M. E. Sinyard and Mary Treasure were not stockholders of the bank at the time of its insolvency, having previously parted with their stock; but the master finds from the evidence [that the stock still stands in the name of the said John Allen, M. E. Sinyard and Mary Treasure, on the stock ledger of the bank, and the evidence is insufficient to show that an actual transfer of the stock was made by them prior to the insolvency of the bank, and therefore the said John Allen and M. E. Sinyard are liable,] [11] and so would Mary Treasure be were she not a married woman.

The defendants submit to the master the following points :

1. There can be no recovery against the defendants in the

present proceeding, because the remedy is pointed out by an act of assembly, as set forth in defendants' demurrer and exceptions filed.[2]

2. The plaintiffs have no right of action against the defendants jointly, nor in the form of action brought.[3]

3. The par value of the stock of the bank was fifty dollars per share, and the stock ledger shows that this amount was paid in full by the original subscribers of the stock; that subsequently, and long before the debts of the plaintiffs were incurred by the bank, the par value of the stock was reduced to twenty-five dollars per share, and the defendants or their assignors having paid into the bank double the amount of the par value of the stock held by them at the time of its insolvency, and at the time when the debts of the plaintiffs were incurred, they are not now liable to any further liability to said plaintiffs.[4]

4. The defendants or their assignors having paid in full the stock subscribed by them at the organization of the bank, as appears from the stock ledger, and the stock having been subsequently reduced to the par value of twenty-five dollars per share, and long before the debts of the plaintiffs were incurred, they cannot now, in any event, be held to a liability of more than twenty-five dollars per share on the amount of stock held by them respectively at the time of the insolvency.[5]

5. There can be no decree against Hannah Neigh, because she was a married woman at the time she subscribed for her stock and at the time of the insolvency of the bank.

6. There can be no decree against Matilda Houston, because she was a married woman when she became a stockholder and subscribed for the stock standing in her name.

7. There can be no decree against B. S. Erwin, administrator of Mary F. Dimmick, deceased, and Mary Treasure, because they were married women at the time of the insolvency of the bank and at the time when the debts of the plaintiffs were incurred.

8. There can be no decree against John Allen and Mary Treasure, because they were not stockholders of the bank at the time of the insolvency of the bank, nor at the time the debts of the plaintiffs were incurred. . . . . .

—The master answered these points as follows:

1, 2. The court having already passed on points 1 and 2, the master does not presume to disturb its ruling.

Master's Report.

3. The statements in point 3 that the stock of the bank was fifty dollars per share, and that the stock ledger shows that this amount was paid in full by the original subscribers of the stock, and that the stock was reduced to twenty-five dollars per share, is correct, but those payments were "paid *into* the bank" and were not such as in the opinion of the master would relieve these defendants from liability for debts contracted *by* the corporation. In the opinion of the master, the fifty dollars paid per share of stock was money paid as an obligation due to the corporation, the parties being the stockholders and the bank; while the liability for which this bill in equity is brought is an obligation for debts owing by the corporation, the parties being the stockholders and the creditors of the bank.

4. [The clause in the charter that the stockholders of said bank shall be "held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of said bank, to the extent of double the amount of the stock subscribed for or held by them," means, in the opinion of the master, that the stockholders are individually liable to the creditors of the bank to the extent of double the amount of stock subscribed for by them, independent of what they may have paid to the bank for their stock; and the fact that they paid fifty dollars per share, and then reduced the value per share to twenty-five dollars, can affect their liability to creditors of the bank only so far that when the shares were $50 they would have been liable for $100, while when the shares are reduced to $25 their liability is reduced to $50 per share.] [9]

Points 5, 6 and 7 are in the opinion of the master well taken.

Point 8: The books of the company show that John Allen and Mary Treasure and M. E. Sinyard hold the respective number of shares charged, and as such are liable for them.

Notice being given of the report as ready for filing, the plaintiffs filed exceptions to the decision of the master that the defendants who were married women were, in consequence of their coverture, not liable for the debts of the bank.[1,2] The defendants filed exceptions, also, alleging that the master erred in overruling their points submitted to him,[2 to 5] and in reporting the findings embraced in [ ] [6 to 9] John Allen further excepted to the finding embraced in [ ] [11]

Arguments.

The several exceptions having been overruled by the master were renewed before the court. After argument, the court, in an opinion by DREHER, P. J., sustained the exception of the plaintiffs and dismissed the exceptions of the defendants. A decree was then entered in accordance with the opinion of the court, ordering and directing that the defendants severally pay to the plaintiff Dreisbach, as assignee, the sum of $46.30 for each share of stock held or subscribed for by them, or their intestates, or testators, respectively, for the payment of the debts of the Miners' Bank of Summit Hill, in accordance with a schedule embodied in the decree, and that the defendants pay the costs in equal proportions.[10] The defendants thereupon took this appeal, specifying that the court erred:

1. In overruling the demurrer to the bill.[1]

2–9. In overruling the defendants' exceptions to the master's report.[2 to 9]

10. In entering the final decree.[10]

11. In overruling the exception of John Allen.[11]

12. In sustaining the exception of the plaintiffs.[12]

*Mr. Edward Harvey* (with him *Mr. George R. Bedford*, *Mr. Allen Craig*, *Mr. James S. Loose*, *Mr. Laird H. Barber* and *Mr. Frederick Bertolette*), for the appellants:

1. Had the court jurisdiction to entertain this bill? The act of April 16, 1850, P. L. 477, prescribes the method in which the liability of the defendants is to be established, if they are liable at all. The view of the master and court below that that act does not apply, for the reason that the Miners' Bank is not a bank of issue, is erroneous, because the act plainly provides that every banking corporation thereafter created shall be subject to its provisions; because by the terms of its charter the Miners' Bank is a banking corporation, and because the act of 1850 provides not only for banks of issue, but for banks of discount and deposit also, and the latter are properly embraced within the term banking corporation: Oulton v. Sav. & Loan Soc., 17 Wall. 118; People v. Insurance Co., 15 Johns. 358, 390; Bouvier's Law. D., tit. Banks; Curtis v. Leavitt, 15 N. Y. 166; Warren v. Shook, 91 U. S. 704; Selden v. Trust Co., 94 U. S. 419; U. S. Rev. Stat., § 3407; M. & M. Sav. & L. Co. v. Conover, 5 Phila. 18; Schober v. Sav. Fund & Loan Ass'n, 35 Pa. 229; Morse on Banks and Banking, 445.

Arguments.

2. The charter of the Miners' Bank empowers it to do all kinds of banking except issuing notes: §§ 2–4, act of April 10, 1873, P. L. 674; and it is no stretch of words to say that actually and commercially it is a banking corporation. All that was decided in Fox's App., 93 Pa. 406; Merchants' Bank v. Shouse, 102 Pa. 488; and First N. Bank v. Gruber, 87 Pa. 468, was that savings institutions, which were in no sense banks and did not possess any distinctively banking privileges, were not subject to the act of 1850. In view of the character of this corporation, the act of 1850 is to be construed in pari materia with the special statute by which it was chartered: Means's App., 85 Pa. 75; In re Shackamaxon Bank, 4 Pa. C. C. R. 194. There are many illustrations in the books of such a construction: Neeld's Road, 1 Pa. 353; Keeling's Road, 59 Pa. 358; Jacoby v. Shafer, 105 Pa. 610; Linton's App., 104 Pa. 228; Koontz v. Howsare, 100 Pa. 506; Booz's App., 109 Pa. 592; Union Canal Co. v. O'Brien, 4 R. 358. The full and complete remedy which the act of 1850 provides is exclusive of all others: Section 13, act of March 21, 1806, 4 Sm. L. 332; Morawetz on Priv. Corp., § 893; Youghiogeny Shaft Co. v. Evans, 72 Pa. 334; Hoard v. Wilcox, 47 Pa. 51; Patterson v. Lane, 35 Pa. 275.

3. The defendants are not liable for twice the amount of the stock held by them. The evident purpose of the legislature, in § 13 of the incorporating act, was simply to double the capital as a security for the engagements of the bank, by imposing on the stockholders the liability to pay in an amount equal to their subscriptions. This view is in accordance with the meaning of the verb, to double, as defined in Webster's Dictionary, viz., to increase by adding an equal number, and also with legal authority: Thompson on Liability of Stockholders, § 37; Morawetz on Priv. Corp., § 881; Schriker v. Ridings, 65 Mo. 208; Root v. Sinnock, 120 Ill. 359 (60 Am. Rep. 558); Amer v. Armstrong, 6 Pa. C. C. R. 392; Fox's App., 93 Pa. 417. In Schriker v. Ridings, supra, the identical question of statutory construction raised here is decided. The liability of stockholders is purely statutory and in derogation of the common law: Lane's App., 105 Pa. 58. Hence it must be construed strictly in favor of the stockholder: Endlich on Statutes, § 350. No question is raised as to the legality of the reduction of capital from $50 to $25 per share.

4. The finding that John Allen was a stockholder was based upon the fact that his name appeared upon the stock ledger. But this fact was only prima facie evidence, and he testified that he had transferred his stock before the insolvency occurred, and had informed the cashier thereof. And the master erred in holding that the married women were liable. No such liability is imposed specially by the act of incorporation. If liable, they must be so from the use of the general term, stockholder, in the act. But they had no power to assume the liabilities of stockholders: Wolbach v. Building Ass'n, 84 Pa. 211. The contract by which they became stockholders being void, the incident of liability for the bank's debts did not exist: Hahn's App., 114 Pa. 153; Amer v. Armstrong, 6 Pa. C. C. R. 392. However the law may be held by the federal courts, as to national banks, a married woman is not liable to assessment on the stock of a corporation chartered by this state. Her liability for taxes, or for building division fences under the fence law, is a condition of her ownership of realty and her relation to government, and is not analogous to that alleged in this case.

*Mr. W. G. Freyman* (with him *Mr. Horace Heydt*), for the appellees:

1. That the court had jurisdiction there can be no doubt. The act of April 16, 1850, P. L. 477, applies only to banks of issue: First N. Bank v. Gruber, 87 Pa. 472; Fox's App., 93 Pa. 416; Merchants' Bank v. Shouse, 102 Pa. 488. The proper proceeding was by bill in equity: Pollard v. Bailey, 20 Wall. 520; Craig's App., 92 Pa. 400; Lane's App., 105 Pa. 49; Mathez v. Neidig, 72 N. Y. 100. It would be so, even if this bank were subject to the act of 1850: Means's App., 85 Pa. 78. The liabilities to be enforced in the manner pointed out in §§ 32 and 33 of the act of 1850, are only the special liabilities to note-holders. If there was a remedy at law, it would not follow that the jurisdiction of equity is ousted, the equitable remedy being more convenient: Kirkpatrick v. McDonald, 11 Pa. 387. And the assignee is the proper party to file the bill in any event, as, if the banking act of 1850 and the act incorporating the Miners' Bank could be construed together, the

supplement to the act of 1850, approved April 12, 1867, P. L. 71, would be applicable : Means's App., supra.

2. It is clear that the defendants are liable for twice the amount of their stock. Their statutory liability to creditors, imposed by § 13 of the act of incorporation, is distinct from the contract liability to the bank created by their stock subscriptions, and the former accrues only when the assets of the bank, including the capital subscribed, have been exhausted : Craig's App., 92 Pa. 400 ; Means's App., 85 Pa. 75. It follows, that the double liability means a liability for $100, if the stock is $50 per share, or $50 if it is $25 per share. A clause imposing the liability " to the amount of the stock," makes the stockholders liable beyond their stock subscriptions. The argument of the defendants, therefore, involves the absurd anomaly of construing that phrase and the one in the charter of this bank, viz., " to the extent of double the amount of the stock," as meaning one and the same thing. But the doctrine we contend for is authoritatively settled by Lane's App., 105 Pa. 57 ; and it is unnecessary to contend that the reduction of the stock was unauthorized, since the assessment upon it as reduced is sufficient to pay the bank's indebtedness.

3. If John Allen made any transfer of his stock, the transfer itself was the best evidence, and should have been produced, and as to the liability of the married women, we claim to recover in this case upon a statutory liability, as distinct from a contract liability. The defendants admit that a married woman may hold and transfer stock, and the case they cite, Hahn's App., 114 Pa. 153, so rules. As the charter of the Miners' Bank exempts no stockholder, but makes all individually responsible, it follows that they are liable for the contracts and debts of the bank, which is a different thing from holding them liable upon their own contracts. In Amer v. Armstrong, 6 Pa. C. C. R. 392, the master held them liable, though the court did not pass upon the question. The existence of such a liability was adjudged by the U. S. Circuit Court for the district of Vermont, in Withers v. Sowles, 1 Lawy. Rep. 64, under § 5151, U. S. Rev. Stat., the provisions of which are similar to those of this bank's charter. The liability rests upon the same basis as that for taxes and division fences, being an incident annexed by the law of the ownership of the stock.

Opinion of the Court.

PER CURIAM:

The exceptionally able argument of the learned counsel for the appellants has not satisfied us that there is any error in the decree of the court below. His main contention was that there can be no recovery against the defendants, in the present proceeding, because the act of April 16, 1850, entitled "An Act regulating banks," gives a full, complete, and adequate remedy at law for the relief sought by the present bill. It is very true, and we have so held repeatedly, that since the act of 1806, where a remedy is given by statute such remedy must be pursued. But the difficulty in the appellants' way is that the act of 1850 applies only to banks of issue, of which this bank was not one. We think this principle is settled by First N. Bank v. Gruber, 87 Pa. 468; Fox's App., 93 Pa. 406; Merchants' Bank v. Shouse, 102 Pa. 488. A re-examination of the various provisions of the act of 1850 only confirms us in the views expressed in those cases, and a further discussion of the question is deemed unnecessary.

Another point raised by the appellants is the extent of the personal liability of the stockholders. The thirteenth section of the act of incorporation of this bank, act of April 10, 1873, P. L. 674, provides that "the stockholders of said bank shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of said bank, to the extent of double the amount of the stock subscribed for or held by them." It was contended by the appellants that this means that the stockholders are responsible to the amount of stock subscribed and unpaid for, and as much more; if the share subscribed for is paid up, the shareholder would be responsible to the extent of the par value of another share. We cannot assent to this view. The liability to the corporation for the amount of subscriptions unpaid exists without this personal liability clause in the charter. The clause referred to for the benefit of the creditors was plainly intended to give them a claim upon the stockholders to double the amount of the stock held by them, respectively. The stock in such cases is presumed to be paid up in whole, or in part at least, and this fund was necessarily liable to creditors without any individual liability clause. The contention of the appellants would make the stockholders liable for only an amount

equal to the capital stock.   In Lane's App., 105 Pa. 49, where the stockholders were individually liable to the amount of the shares of capital stock subscribed or held by them, it was said by our Brother GREEN, in delivering the opinion of the court: "Moreover, the liability created by this section [fourteenth section of the act of April 29, 1874] is a direct liability from the stockholder to the creditor, and it exists to the amount of the stock held by the stockholder, without any reference to the question whether it has been paid for or not.   Hence the stockholder, although he has paid in full to the corporation for his stock, is nevertheless still liable to the extent of the whole value of his stock."   This is the rule when the liability of the stockholder is single, i. e., to the value of his stock.   It follows logically that, where the liability is double, he is liable not only to the corporation for the balance, if any, unpaid upon his stock, but also to creditors to double the amount of said stock.   As was well said by the learned judge of the court below: "The language of the statute, ex vi termini, it seems to us, can mean nothing less."

John Allen, one of the appellants, complains that the master erred in finding as a fact that he was a stockholder.   This finding of fact was approved by the court below, and we are not prepared to say it was not justified by the evidence.

The only remaining question which requires notice, is that raised by the twelfth assignment, in which it was alleged that married women were not liable under the individual liability clause of the charter.   If their liability were a contractual one, as was the case in Wolbach v. Building Ass'n, 84 Pa. 211, and other cases cited by the appellants, we would be disposed to regard this point as well taken.   But the liability is one created by statute, and a married woman who holds shares of stock in such a corporation takes it cum onere, subject to whatever responsibility the law imposes upon the holders of such shares.   She is as much liable to creditors, in such case, as she would be liable for taxes upon her real estate.   In either case the liability is purely statutory, and arises from no contractual relation, but solely from the possession and ownership of the property.

The decree is affirmed, and the appeal dismissed, at the costs of the appellants.