## O'Reilly *versus* Bard.

1. Statutes which impose individual liability on stockholders for the debts of the corporation are to be strictly construed.

2. A stockholder of a manufacturing corporation, incorporated under the Act of April 7, 1849, and its supplements, who pays a judgment recovered in the manner provided by said Act, is entitled only to the remedy provided by said Act, viz., to take an assignment of the judgment, and enforce execution against other stockholders who were parties defendant in said judgment. But he cannot maintain an action of assumpsit against other stockholders, who were not parties to said judgment, to enforce contribution.

3. Brinham *v.* Wellersburg Coal Co., 11 Wright, 43, applied and followed.

March 7, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Berks county :* Of January Term, 1884, No. 286.

This was an action of assumpsit by Adam Bard, Henry Brown, and the executors of Peter Miller, deceased, against Patrick O'Reilly, surviving partner of H. F. Felix & Co., George Whitaker, Joshua Keely and Patrick O'Reilly. The said Patrick O'Reilly died after verdict and before judgment, and by writ of scire facias Catharine C. O'Reilly et al., his executors, were substituted of record in his place.

The narr. contained, besides the common counts, a special count averring that in certain suits brought against the Reading Industrial Manufacturing Company and the plaintiffs in this suit, who were some of the stockholders in said company, judgments were recovered, and that executions against said company having been returned "nulla bona," the plaintiffs in this suit, being held liable solely by reason of their being stockholders as aforesaid, paid the said judgments. The narr. averred that the rest of the stockholders were in law liable with the plaintiffs herein to pay the said indebtedness of said company, as determined by said judgments, and claimed to recover from the defendants, being the rest of said stockholders, or those legally representing them, the sum of $15,000, that being the contribution which said defendants should justly pay. Plea, non assumpsit, with leave, etc.

On the trial, before SASSAMAN, J., the facts specially averred in the narr. were substantially proved, as more fully stated in the opinion of this court.

The defendants presented, inter alia, the following points:

1. Stockholders of a corporation are not individually liable for its debts either at common law or in equity; if such

liability exists, it is created by the statute under which the corporation is organized, and the extent of such liability is measured by its provisions; consequently the remedy against stockholders of a company organized under the general manufacturing laws of 1849 is exclusively under the provisions of that statute.

Answer. Declined.

3. In the present case the statute not only makes the stockholders individually liable, but points out the mode by which such liability may be enforced—first, on the part of creditors by joining one or more stockholders in a suit against the company; and second, on the part of such of the stockholders who may pay the judgment so recovered against the other stockholders, against whom such recovery is had, who do not pay their share or proportion thereof; beyond this the statute gives no right of contribution on the part of such stockholders as may have paid the judgment against the remaining stockholders who have not paid.

Answer. Declined.

4. If there is no remedy in equity on the part of stockholders who have paid a judgment recovered against them and the company by a creditor, because the statute provides a specific mode of proceeding, for the same reason no common law remedy can be used to enforce contribution.

Answer. Declined.

5. If the remedy by the statute is exclusive, the present action not being according to its provisions cannot be maintained, and the verdict must be for the defendants.

Answer. If the remedy were exclusive, as claimed, this point would have to be affirmed; but we do not so hold the law to be, and the point is refused.

The court charged the jury, inter alia, as follows:

"We regard all these parties, stockholders in the Industrial Manufacturing Company, to be, by reason of their individual liability, somewhat in the nature of sureties pledged for the payment of such debts as the corporation could not pay to its creditors, and standing in this assimilated situation of sureties, if any one at the option of any creditor or creditors would have to pay any debt which the corporation failed to pay, without the chance of recourse to the other corporators and stockholders in like situation, it would be such a hardship as would be contrary to our ideas of justice and right. It would, in our estimation, be a wrong to make the one or the few pay the debts of the many. And especially so where the fact of the association of a number of men of acknowledged capital were ostensibly in the similitude of sureties, personally pledged to pay debts of a corporation of which they were

all members, and which by reason of their being associated to it would be entrusted with special confidence and credit, until under the common management it sunk into insolvency, if one alone were selected from whom to have payment by the creditors, although his own interests in the corporation would be very small. With our present views we hold that there is a right to recover here. . . . . . The next trouble in this case is after we allow the action of assumpsit to lie for the recovery sought, whether it may be maintained for contribution against only one at a time or more than one. We allow the issue to be maintained in this action on the theory that it arises between these stockholders in the same concern by a sort of implied assumpsit. As soon as these stockholders subscribed to the corporation they assumed certain obligations to the corporation, and by jointly and severally pledging themselves under the Act of Assembly to the credit of the company, they also necessarily got into an obligatory relation to each other that would imply an obligation higher than merely moral to assist each other in the discharge of the obligations incident to the relation which they assumed the moment they gave their names to the stock of the company. We cannot see that the situation of the one would be in any way different from the other. If any of them were sued, it was their duty in good faith to make a proper defence. There is no denial here that the plaintiffs did not use good faith. If they were unsuccessful then, paid the claim, took an assignment of the judgment, and if they could not recover from the company, or those joined with them, they had the undoubted right to sue for contribution one or more than one to avoid multiplicity of actions, for contribution so far as they could be reached in the proper county and within the jurisdiction of a proper court, and they would be entitled to judgment against those against whom they had proven their case by competent evidence. . . . . . If the plaintiffs have used good faith in the bringing and conduct of their suit against the present defendants, we see no reason why they should not recover from them in the gross, and that amount to be specially set out in such ratable proportions as would insure equality among the number of shares held by any of them in the capital stock of this company at its dissolution May 19, 1860, or at the rendition of this verdict, if the evidence satisfies you that they were of the now solvent stockholders of the company, and having been stockholders at the time the liability attached."

Verdict, "in favor of plaintiffs for $13,827.38, to be divided equally into 137 shares, of which Patrick O'Reilly, surviving partner of H. F. Felix & Co., shall pay 27 shares, or $2,725.10;

George Whitaker 3 shares, $302.79; Joshua Keely 2 shares, $201.86, and P. O'Reilly 60 shares, $6,055.79—equal to $9,285.54."

Patrick O'Reilly died after verdict, and his executors were substituted of record as before stated. Judgment was afterwards entered generally on the above verdict, with interest from its date. The defendants, executors of Patrick O'Reilly, took this writ of error, assigning for error, inter alia, the answers to defendant's points, as above, and the portions of the charge above quoted.

*Cyrus G. Derr (James A. O'Reilly* with him), for the plaintiffs in error.—Section 23 of the Act of 1849, being in derogation of the common law, must be strictly construed: Means's Appeal, 4 Norris, 78. A bill in equity will not lie to recover contribution under circumstances similar to this case: Brinham *v.* Wellersburg Coal Co., 11 Wr., 43. And the reasoning in that decision applies equally to an action of assumpsit. The Act of 1849 gives no right of contribution against the stockholders not parties to the judgment; the paying stockholders can only have a remedy by execution on the judgment.

*George F. Baer (H. Matzberger* and *William P. Bard* with him), for the defendants in error.—The action for contribution is founded upon the equity arising from the payment by the plaintiff of more than his share of a liability existing at the time against all. The object of the Act of 1849 was to create a joint and several liability on the stockholders, which could be enforced either by creditors against all the stockholders, or where enforced only against some, then to be enforced according to the general principles of contribution between stockholders: Wheatfield Tw'p. *v.* Brush Valley Tw'p., 1 Casey, 113; Horbach's Adm'rs. *v.* Elder, 6 Harris, 33; Armstrong Co. *v.* Clarion Co., 16 P. F. S., 218; Aultman's Appeal, 2 Out., 505. The only point decided in Brinham *v.* Wellersburg Coal Co., 11 Wr., 43, was that a bill in equity was not the proper remedy to enforce contribution in that case.

Mr. Justice CLARK delivered the opinion of the court, October 6, 1884.

The Reading Industrial Manufacturing Company was incorporated November 10, 1857, under the provisions of the Act of April 7, 1849, entitled "An Act to encourage manufacturing," &c., Pamph. Laws, 563, and its several supplements; its operations were carried on for about three years; the company

then became insolvent, and suits were instituted for the recovery of its indebtedness. One of these suits was brought by Moses K. Graeff, in which were joined as defendants several of the stockholders, viz: Peter Miller, Adam Bard, Henry Brown, and A. Henke & Co.; judgment was entered against the defendants in this case, December 7, 1868, for $8,433.50, which judgment, after execution issued against the corporation, was paid April 6, 1870, by the executors of the will of Peter Miller, deceased, Adam Bard, and Henry Brown, three of the stockholders, joined as defendants, and the judgment was thereupon assigned to them.

Another suit was that of William McIlvaine & Sons, in which James Beidler, Henry Brown, Adam Bard, Peter Miller, and Samuel Spohn were made defendants, jointly, with the corporation; judgment was entered in this case December 9, 1870, for $184.50, and after execution against the company, this judgment was likewise paid by the same persons, and was assigned to them.

The case at bar is an action in assumpsit for contribution, brought by the stockholders paying the judgments against the remaining, or some of the remaining, stockholders. It does not appear what constituted the distinct cause of action, in each of the suits instituted against the company, but we may, perhaps, assume that as certain of the stockholders were joined in the suits, and judgments were obtained against them the suits were founded upon that class of debts, for which stockholders were liable.

Corporation stockholders, who have already contributed their proportions to the capital stock, are not at the common law, or in equity, liable for the corporate debts; statutes which impose this liability must therefore be strictly construed; this rule of law is well settled: Mean's Appeal, 4 Norris, 78. The right of contribution among stockholders also exists by reason only of the obligation imposed by the statute. If it were not for the statute there would exist no personal responsibility on the part of the holder of the stock, either to the corporate creditors or to each other for the corporate debts. The right of the plaintiffs to recover in this case, therefore, depends upon the construction of the Act of 7th April, 1849, and its supplements of 20th April, 1853, Pamph. Laws, 637, and 27th March, 1854, Pamph. Laws, 215.

By the 9th section of the Act of 1849, it is provided that stockholders in any company, incorporated under that Act, shall be jointly and severally liable, in their individual capacities, for the debts of the company, to the amount remaining unpaid on their shares of stock, held by them respectively. The supplement of 20th April, 1853, extended this liability,

as to all companies thereafter incorporated, to all the debts of the company without restriction. . The further supplement of 27th March, 1854, however, limited this general liability to "debts due to miners, quarrymen, and other laborers employed by such companies, and for machinery, provisions, merchandise, country produce, and materials furnished for said companies, respectively," and provided that this liability should be "enforced and collected in the manner provided for in the Act, to which this is a supplement." The Reading Industrial Manufacturing Company having been incorporated November 10, 1857, the extent of the liability of its stockholders is fixed by the Act of 1854, and the manner of its enforcement is under the Act of 7th April, 1849.

Referring to the Act of 1849, we find that form of procedure, provided as follows, viz :

"In any action, brought to enforce any liability under the provisions of this Act, the plaintiff may include, as defendants, any one or more of the stockholders of such company, claimed to be liable therefor; and if judgment be given in favor of the plaintiff for his claim, or any part thereof, and any one or more of the stockholders, so made defendants, shall be found to be liable, judgment shall be given against him or them. The execution upon such judgment shall be first levied on the property of such company, if it be found in the county where the chief business of the company is carried on, and, in case such property sufficient to satisfy the same cannot be found in said county, the deficiency, or so much thereof as the stockholder or stockholders, defendants in such judgments, shall be liable to pay, shall be collected of the property of such stockholder or stockholders."

If this action of assumpsit were one brought by a creditor of the corporation, for the collection of a proper claim from the stockholders, even after judgment and execution against the corporate effects, it clearly could not be maintained; this will doubtless be conceded, because, if the defendants in such a case are answerable at all, they are answerable under the statute, and the remedy of the statute must be pursued; that remedy is special, and, under the rule of the general Act of 1806, it is exclusive. Hoard *v.* Wilcox, 11 Wright, 51, and Mansfield Iron Works *v.* Willcox, 2 P. F. S., 378, are cases precisely in point, and further reference is unnecessary.

But it is urged, that this is an action for contribution, not one by a creditor, to enforce liability under the Act; that the action for contribution is founded upon the general equity, arising from the payment by the plaintiff of more than his share of a liability existing at the time against all; that it is a general rule of law, independently of the statute, that where

several are jointly and severally bound to pay a sum of money and one of them pays the whole, in relief of the others, he may recover from the others, the aliquot part which they ought to pay. They say, therefore, that, independently of the remedy of the statute, and in addition thereto, they have a right to avail themselves of the ordinary remedies provided by law, in cases of contribution. It is certainly true that this principle is in general a correct one; contribution is not founded on contract, but on general principles of justice; it did not exist at the common law; it arises and is enforceable in equity; under our practice however relief is administered in the common law courts upon an implied assumpsit. But referring to the Act of 1849, we find specific provisions made to enforce contribution as follows:—

"On the payment of any judgment aforesaid, or any part thereof, by one or more stockholders, the stockholder or stockholders so paying the same shall be entitled to have such judgment or so much thereof as may have been paid by him or them, assigned by (to) him or them for his or their benefit, with power to enforce the same in manner aforesaid; first, against the company, and in case the amount so paid by him or them shall not be collected of the property of the company then ratably against the other stockholders, if any such there be originally liable for the claim, on which such judgment was obtained."

Whether the suit be by a creditor upon his claim, or by a stockholder for contribution, the action is in enforcement of individual liability of the corporate debt and the Act of 1854 expressly restricts the remedy to the form of procedure provided in the Act of 1849, by requiring that collection shall be "in the manner provided for in the Act," to which it is a supplement.

That the rule of the Act of 1806 is to be applied to the provisions of the Act of 1849, and its supplements has already been considered and adjudged by this court in a variety of cases.

In Patterson *v.* Lane, 11 Casey, 275, a bill in equity was filed by creditors of the Conestoga Steam Mills, a manufacturing company incorporated under the Act of 1849, against the stockholders to enforce their liability for the debts of the company and it was held that there was an adequate and complete remedy at law: that the mode of making individual stockholders liable, was particularly prescribed by the Act and that special remedy must be pursued.

In Hoard *v.* Wilcox, supra, an action of assumpsit was brought against the stockholders of a similar company for a

like purpose and it was held that the remedy was statutory and special and must be pursued.

The case of Brinham *v.* Wellersburg Coal Co., 11 Wright, 43, was founded on a bill in equity and in this alone is it distinguishable from the case at bar. Certain of the stockholders of a corporation organized under the Act of 1849, having been sued with the company, judgment was obtained, which they were compelled to pay ; on a bill for contribution, it was held, that their right was exclusively under the provisions of the statute. Although the case cited was in equity and the case at bar is at law, yet neither of them are under the statute, and the same reasoning which shows that a bill cannot be maintained, proves as well that an assumpsit cannot.

In the case of Youghiogeny Shaft Company *v.* Evans, 22 P. F. S., 334, the cases of Brinham *v.* Wellersburg Coal Co., *supra*, and Hoard *v.* Wilcox, *supra*, are cited with approval; and AGNEW, J. there says, " The liability of stockholders is secondary and the proceeding to enforce it is statutory, not at common law : it was therefore held in several decisions that in such case the proceeding is wholly governed by the statute, and the rights and liabilities of the parties must be ascertained by it."

The remedy of the statute is the enforcement of the judgment. There is no provision by scire facias or otherwise, to bring in the stockholders not parties thereto; and as the judgment can only be enforced against the parties, we must conclude that the stockholding defendants are the only parties against whom any remedy was intended to be provided. This peculiar provision is perhaps more easily reconcilable with fair dealing as between the stockholders, when it is remembered that by the Act of 1849 under which it first applied they were liable only to the extent of their unpaid stock; when applied however under the Act of 1854, where liability exists whether the stock be paid or not, it is perhaps incongruous and produces results not contemplated. If so the subject was one proper for the legislature—we can only declare the law as it is written.

The views, which we have taken of this point in the case renders it unnecessary that we should consider the other errors assigned.

Judgment reversed.