## Gordon, Secretary of Banking, Appellant, v. Winneberger.

Argued January 3, 1933. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Harold D. Saylor,* Deputy Attorney General, with him *J. Hibbs Buckman,* Special Deputy Attorney General, *Lucien B. Carpenter,* Assistant Deputy Attorney General, and *Wm. A. Schnader,* Attorney General, for appellant.—The Act of May 11, 1874, P. L. 135, imposes liability upon stockholders of all incorporated companies which transact a banking business: DeHaven v. Pratt, 223 Pa. 633.

The Susquehanna Title & Trust Company, by availing itself of the power to discount commercial paper conferred by the Act of May 9, 1923, P. L. 123, actually transacted a banking business.

The Act of May 11, 1874, P. L. 135, applies to a specific type of corporation, and must prevail over the general limitation of liability contained in the general Corporation Act: Com. v. R. R., 268 Pa. 271; Kolb v. Church, 18 Pa. Superior Ct. 477; Com. v. Kline, 294 Pa. 562.

*George Wharton Pepper,* of *Pepper, Bodine, Stokes & Schoch,* with him *James F. Boylan, Harry L. Jenkins* and *Stanley Folz,* for appellee.—The immunity of stockholders, in title insurance companies, as declared in section 24 of the general Corporation Act of April 29, 1874, has never been repealed: Prudential Trust Co.'s Assignment, 223 Pa. 409; DeHaven v. Pratt, 223 Pa. 633; Maxler v. Bank, 275 Pa. 510; Media T. & T. Co. v. Cameron, 289 Pa. 96.

The double liability of corporation stockholders does not exist unless imposed by statute, and statutes imposing such liability are strictly construed: Means's App., 85 Pa. 75.

The Act of May 11, 1874, P. L. 135, as to its prospective feature, was repealed by the Act of May 13, 1876, P. L. 161.

OPINION BY MR. JUSTICE LINN, February 1, 1933:

This action of assumpsit was brought by the secretary of banking, in possession of the insolvent Susquehanna Title & Trust Company pursuant to the Banking Act of 1923, P. L. 809, to recover from defendant, a stockholder, an amount equal to 100% of the par value of capital stock held by him. By affidavit of defense raising questions of law, defendant denied liability on the ground that no statute obligated shareholders to contribute in excess of the par value of their shares, which, it is conceded, had been paid. The court below entered judgment for defendant (16 D. & C. 505). Plaintiff has appealed.

The title company was incorporated in 1924 under section 2, paragraph 19, and section 29, of the Corporation Act of 1874, P. L. 73, 84, approved April 29th of that year, providing for incorporation for the purpose of "the insurance of owners of real estate, mortgagees and others interested in real estate from loss by reason of defective titles, liens and encumbrances." By supplementary legislation (inter alia, Acts of May 24, 1881, P. L. 22; May 9, 1889, P. L. 159; May 29, 1895, P. L. 127; June 1, 1907, P. L. 382) additional powers were granted, among them the powers of a trust company and to receive deposits. By Act of May 9, 1923, P. L. 173, entitled "extending and enlarging the powers and rights of trust companies and banks organized and incorporated under the laws of the Commonwealth," corporations, so organized under the Corporation Act of 1874, were authorized, inter alia, to discount notes, etc. We understand that all of these powers were exercised by the company involved.

While the statement of claim does not refer to any statute, in his argument plaintiff contends that defendant's liability results from an act approved May 11, 1874, P. L. 135, considered with the fact that the company exercised the power to discount paper conferred by the enabling Act of 1923, supra. The Act of May 11, 1874, is

entitled "An act fixing the liability of stockholders of banks, banking companies and other banking institutions in this Commonwealth." It provides "That from and after the passage of this act, all stockholders in banks, banking companies, saving fund institutions, trust companies, and all other incorporated companies doing the business of banks or loaning and discounting moneys as such in this Commonwealth, shall be personally liable for all debts and deposits in their individual capacity to double the amount of the capital stock held and owned by each: Provided, that before such liability shall accrue, in case of banks already chartered, the stockholders shall, at a regular or adjourned meeting, declare by resolution or otherwise their intention to accept the provisions of this act, and notice of their action shall, within thirty days thereafter, be filed in the office of the auditor general and secretary of the Commonwealth, setting forth at length their proceeding, declaring their intention to be bound by its provisions in the same manner and as fully as if the same had been a part of the original act by which they were incorporated." We shall designate this as the May Act to distinguish it from the general Corporation Act of April 29th of the same year.

In denying liability, defendant relies on section 24 of the general Corporation Act, as follows: "The officers and stockholders of corporations organized under or accepting the provisions of this act, shall not be individually liable for the debts of said corporation......" He contends that the immunity or exemption from liability, so conferred, was not affected by the May Act, and that the May Act was repealed by the general Banking Act of May 13, 1876, P. L. 161.

The learned court below was of opinion that the May Act was repealed by the general Banking Act of 1876, supra, section 33, repealing all acts or parts of acts inconsistent with it.

The general rule is that a shareholder's liability for corporate debts is limited to the amount he agreed to

contribute to the capital stock. Enlarged liability is the exception; it possesses elements of a penalty. Section 24 shows that the legislature was not content to rest the stockholder's obligation on the implications of the general rule and, therefore, specifically expressed the immunity. It is a valuable privilege. A legislative intention to withdraw it should clearly appear before the courts may declare it withdrawn. In O'Reilly v. Bard, 105 Pa. 569, 573, we said: "Corporation stockholders, who have already contributed their proportions to the capital stock, are not at the common law, or in equity, liable for corporate debts; statutes which impose this liability must therefore be strictly construed; this rule of law is well settled: Mean's App., 85 Pa. 78." Appellant would concede all that, and also that, standing alone, the May Act did not affect the immunity. He contends that the privilege was relinquished at the moment the title company discounted paper, as permitted by the Act of May 9, 1923, supra. His argument is that by discounting notes, etc., the company became a bank, destroyed the immunity granted by section 24, subjected itself to the May Act, and imposed on its shareholders the enlarged liability there specified. The contention is not well founded, as will appear by considering the May Act and the general Banking Act of 1876 in the light of the conditions confronting the legislature immediately after the adoption of the Constitution which became effective January 1, 1874.

When the General Assembly convened in 1874, it became necessary to enact legislation to give effect to the Constitution, as was directed in section 31 of the schedule. Special charters were prohibited in article III, section 7. General statutes providing for incorporation were therefore among the matters requiring attention, subject to the provisions of article XVI. Among the bills introduced to provide for general incorporation, was that passed and approved April 29th, since known as the Corporation Act of 1874. Another, which failed to

pass at that session, was a general act to provide incorporation for the transaction of the banking business. Such a law was passed in 1876, supra. In view of the subsequent development of the title insurance company into what may be called the modern trust company (to distinguish it from trust companies created by special laws prior to 1874) it may be noted, at this point, that no provision was made for the formation of trust companies, as such, in the Corporation Act of 1874, or in the general Banking Act of 1876, or by any other general law. Such trust companies developed from section 2, clause 19, and section 29 of the general corporation act, as supplemented from time to time.

The general corporation act provided for the creation of certain corporations, many of them in classes provided for, prior to the adoption of the Constitution, by various general acts, a number of which were expressly repealed by section 46 of the corporation act.

A comparison of the general Banking Act of 1876, with the May Act of 1874, in the circumstances then confronting the legislature, shows conclusively that the legislature intended that the later act should be a substitute for the May Act. It is unnecessary to discuss the extent of the enlarged liability imposed on shareholders by the May Act (though, compare Dreisbach v. Price, 133 Pa. 560). That obligation, whatever it was—as to shareholders in "companies doing the business of banks or loaning and discounting moneys as such," was superseded by the general banking act. The substitution appeared in section 5, as follows: "The shareholders of any corporation formed under this act shall be individually responsible, equally and ratably, but not one for the other, for all contracts, debts and engagements of such corporation to the amount of their stock therein at par value thereof in addition to the par value of such shares." This provision was retained when section 5 was amended May 3, 1909, P. L. 412. The provisions of the May Act, enabling corporations of the class referred to, chartered

prior to the adoption of the Constitution, to accept the provisions of that act, were carried into the later act in section 32. Not only were those provisions of the May Act so superseded by provisions in the later act, but it was the first general act passed after the adoption of the new Constitution for the incorporation of banks. It was substantially a reënactment of prior general legislation on the subject. Its title was: "An act for the incorporation and regulation of banks of discount and deposit." This general act is so obviously intended to be a complete expression of the legislative will concerning the incorporation of banking institutions that, according to familiar rules of construction, we must hold that the legislature intended to repeal the provisions of the May Act concerning the "doing the business of banks or loaning and discounting moneys as such." As to such business, the two acts could not stand together, and section 33 provided that all general acts or parts of acts inconsistent with it should be repealed. This conclusion is fortified, if the May Act be considered as imposing treble liability (Dreisbach v. Price, supra) for, we cannot impute to the legislature an intention to continue to impose treble liability on shareholders in corporations "doing the business of banks or [that is] loaning and discounting moneys as such," and at the same time, to provide, as in the general banking act, that shareholders in "banks of deposit and discount," formed under that act—the only general act under which they could be formed—should be liable only for double their stock subscriptions. Such a distinction or difference in penalties imposed, would involve a classification of banking corporations with no substantial basis in fact and would therefore be unreasonable and ineffective. See Laplacca v. P. R. T. Co., 265 Pa. 304, 308; Mason-Heflin Coal Co. v. Currie, 270 Pa. 221, 225; Com. ex rel. v. Cumbert, 256 Pa. 531, 534. We must hold that the legislature intended what would be legally effective and that section 5 thereafter prescribed the shareholder's liability. The appli-

cable rule of construction is familiar. In Murdoch v. Biery, 269 Pa. 577, we said (page 579), "It is stated in the opinion of this court by Mr. Justice WOODWARD, in Johnston's Est., 33 Pa. 511, 515, 'that a subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law, as well as in reason and common sense, operate to repeal the former'; see also B. & L. Assn. v. B. & L. Assn., 159 Pa. 308; Bennett v. Norton, 171 Pa. 221, 233. In delivering the opinion of the court in Emsworth Boro., 5 Pa. Superior Ct. 29, 31, President Judge RICE says, 'The question of the repeal of statutes by implication is one of legislative intention, and all rules of construction have in view the ascertainment of that intention. One of the rules upon the subject is that a subsequent statute revising the whole subject-matter of a former statute and evidently intended as a substitute for it, although it contains no express words to that effect, operates to repeal the former.' To like import is Endlich on the Interpretation of Statutes, section 241. 'A statute is impliedly repealed by a subsequent one, revising the whole subject-matter of the first:' Sedgwick on Construction of Statutory and Constitutional Law (2d edition), page 105. Ruling Case Law, volume 25, page 925, states that, 'where a statute is revised, or a series of acts on the same subject is revised and consolidated into one, all parts and provisions of the former act or acts, that are omitted from the revised act, are repealed,' and the same principle is found in Sutherland on Statutory Construction (2d edition), volume 1, sections 270, 271."

Is defendant liable under section 5 of the Banking Act of 1876? It is clear that in the general acts providing, on the one hand, for the formation of corporations with the powers specified in section 2, clause 9 and section 29 of the general corporation act, and supplements, and, on the other hand, for banks of discount and deposit under the Act of 1876, the legislature kept separate and

apart the classes of corporations to be formed under each. Article XVI, section 11, of the Constitution, required that banking corporations be kept in a separate class. It provided: "No corporate body to possess bank and discounting privileges shall be created or organized in pursuance of any law without three months previous public notice, at the place of the intended location, of the intention to apply for such privileges, in such manner as shall be prescribed by law, nor shall a charter for such privilege be granted for a longer period than twenty years." That section 11 was amended in 1920, is immaterial in this case.

In our decisions referring to the subject, we have necessarily observed and adhered to the classification so established. The separation has been maintained with all its implications although the corporations receive deposits of money, and (in the last case) also discounted paper. In the Prudential Trust Co.'s Assignment, 223 Pa. 409, 413, we held that trust companies, incorporated under the same provision of the general incorporation act under which the Susquehanna Title & Trust Company was incorporated, "and deriving their privileges and powers from the Act of 1889 [supra], and other supplementary statutes, are neither banks of issue nor of discount and deposit, within the meaning of the law, and therefore the act relied on as giving a preference to bank depositors, are not authority for the proposition that the same preference must be given to depositors in a title and trust company incorporated for a different purpose and being denied by the express language of the statute the right to engage in the business of banking."

In DeHaven v. Pratt, 223 Pa. 633, the receiver of a trust company, also incorporated under the same act and supplements, sued stockholders for alleged liability in excess of their stock subscriptions, contending that they were liable under the May Act. Without considering whether the act was repealed, as the point was not raised, we held that the trust company was not within its terms,

saying: "It is contended that the words 'trust companies' used in that statute are broad enough to cover the liability of stockholders in modern trust companies. Upon this question the reasoning of the learned court below is unanswerable. The words 'trust companies' used in the Act of 1874 [the May Act] can only have reference to those trust companies created by special acts passed prior to the adoption of the new Constitution, of which there are a few, and which were given the right to engage in a banking business. This is clearly indicated in the title to the act. It is an act fixing the liability of stockholders of banks and banking companies and other banking institutions. At that time there were in existence some so-called trust companies possessing the power to do a banking business, and this was the class of institutions intended to be included in this section of the act. The modern trust company did not then exist, nor was there any authority by which it could be created at that time. After that time no trust company, incorporated under the general Corporation Act of 1874 or its supplements, could be authorized to do a general banking business, and hence we must conclude, as did the court below, that the trust companies mentioned in the double liability Act of 1874 were such as had been previously created with power to engage in the business of banking. The trust company in the case at bar had no such power, and the act does not apply to it."

In Maxler v. Freeport Bank, 275 Pa. 510, we held that a stockholder in a state bank could not enjoin its transformation into a trust company created pursuant to the same provisions of the Corporation Act of 1874, saying, at page 514, ". . . . . . and the holding of the shares of the new corporation would reduce the legal liability in case of insolvency, rather than increase it: DeHaven v. Pratt, 223 Pa. 633."

In Media Title and Trust Co. v. Cameron, 289 Pa. 96, 98, the secretary of banking contended that the trust company, also incorporated and engaged pursuant to the

same enabling legislation as that governing the company involved in this case, was a banking institution, and was therefore controlled by the Act of July 28, 1917, P. L. 1235 (a supplement to the general Banking Act of 1876, supra) prohibiting branch banking establishments. In rejecting the argument we said: "He avers, however, by various later statutes, each of the two classes of corporations is vested with powers which it did not have when that case [DeHaven v. Pratt, supra] was decided, but which the other did have; until now, speaking generally, their powers are substantially the same. Hence, he says, plaintiff must now be considered as if it were a banking institution, and governed by the Act of 1917. It would be just as valid an argument to claim that, because of these recent statutes, banks are to be treated as if they were trust companies, and that the Act of 1917 is no longer applicable even to them. But, aside from this, the statutes relied on are enabling, and not disabling acts, and nothing in them even suggests an intention to make trust companies liable to the Act of 1917, or to place them, on the question of branches, in the class to which banking institutions belong." In every case, then, in which it was contended that such trust companies had transferred themselves into another class of corporations by availing themselves of unconditional enabling legislation, we have held that they remained in the class in which they were incorporated.

Unless, therefore, such trust companies can be transferred from the class of title insurance companies, formed under the Corporation Act of 1874, to "the class to which banking institutions belong," the immunity created by section 24, supra, cannot be displaced by the claim of enlarged liability imposed by section 5. If such change in classification, with the resulting burden, should be made, it must be made by the legislature, not by the court. If the change had been intended by the statutes granting additional powers to companies formed under the Corporation Act of 1874, the legislature would

have used appropriate words to declare the intention; in the absence of such declaration, we must conclude that the change was not intended.

Judgment affirmed.