## City of Harrisburg v. Harrisburg Trust Co.

*Spencer G. Hall*, assistant city solicitor, and *Paul G. Smith*, city solicitor, for plaintiff.

*Arthur H. Hull*, of *Snyder, Hull, Leiby & Metzger*, for defendant.

HARGEST, P. J., February 13, 1940. — This matter comes before us upon a case stated, which raises the question as to whether the Harrisburg Trust Company is liable under an ordinance of the City of Harrisburg imposing a license tax upon "bankers".

The Harrisburg Trust Company was incorporated February 2, 1893, under the General Corporation Act of April 29, 1874, P. L. 73, for the purpose of "the insurance of owners of real estate, mortgages [sic], and others interested in real estate, for loss by reason of defective titles, liens and encumbrances." By proper corporate action, the company accepted the provisions of the Act of May 9, 1889, P. L. 159, granting it additional powers, which powers it has possessed and exercised since accepting the provisions of said act.

The City of Harrisburg, on May 27, 1938, pursuant to section 1 of the Act of July 12, 1935, P. L. 718, 53 PS §12198-2601, which amended section 2601 of The Third Class City Law of June 23, 1931, P. L. 932, enacted an ordinance authorizing the assessment, levy, and collection of an annual license tax for general revenue purposes, which, among other things, imposed a tax of $100 on "all bankers," and such tax was levied against the Harrisburg Trust Company for the year 1938.

On October 26, 1938, the company paid into the State Treasury the tax on its shares imposed by the Act of June 13, 1907, P. L. 640, as amended by the Act of July 1, 1937, P. L. 2657.

*Discussion*

Two questions arise.

1. The trust company paid the tax upon shares into the State Treasury, as required by section 1 of the Act of 1937, supra, which provides that upon such payment the company "shall be exempt from all other taxation under the laws of this Commonwealth." Is it thereby relieved from the license tax under the ordinance of the city passed pursuant to the Act of 1935, supra?

This question has been thoroughly considered by this court in the case of City of Harrisburg v. Capital Bank & Trust Co., 48 Dauph. 83, in which we held that the trust company was liable for the license tax. It is not necessary to further discuss that question.

2. Does the trust company, which possesses and exercises all the powers conferred on title insurance companies under the provisions of the Act of 1889, supra, come under the classification of "bankers" within the license tax ordinance?

Defendant contends that an adherence to the statutes under which it was created, and from which it gets its powers, requires it to be classified as a trust company, and not as a bank, and therefore it cannot be termed a "banker" within the purview of the license tax ordinance.

It is true that neither the Pennsylvania Constitution of 1874 nor the General Corporation Act of 1874, supra, made provision for the incorporation of what are now known as trust companies. They were first incorporated as title insurance companies, and at that time they were in quite a different class of corporations from banks of discount incorporated under the Act of May 13, 1876, P. L. 161. There was a distinct line of cleavage between banks and banking companies and title insurance companies, which developed into what were subsequently largely denominated as title insurance and trust companies.

This defendant, as did many others of its kind, accepted the Act of 1889, which amended and extended section 29 of the Act of 1874, and was thereby given large additional powers. Paragraph 2 of the first clause of section 29 of the Act of 1889 provides that "nothing herein contained shall authorize said companies to engage in the business of banking."

However, the Act of May 9, 1923, P. L. 173, provided:

"That every trust company and bank organized and incorporated under the laws of the Commonwealth of Pennsylvania is hereby authorized and empowered to discount, buy, sell, negotiate, and assign promissory notes, drafts, bills of exchange, trade and bank acceptances, bonds, and other evidences of debt, and to receive and retain in advance interest on loans and discounts made."

Whatever may be said about trust companies theretofore, there cannot be now the slightest doubt that after the Act of 1923 trust companies were authorized to do a banking business.

Defendant relies strongly upon the very carefully considered case of De Haven v. Pratt, 223 Pa. 633, in which Judge Sulzberger, in an extensive opinion reviewing the history of the establishment of trust companies, came to the conclusion that there was no double liability on stockholders of trust companies incorporated under the Act of 1874; and the case of Media Title & Trust Co. v. Cameron, etc., 289 Pa. 96, in which it was held that a trust company was not prohibited from establishing branches within the prohibition of the laws relating to banks of discount and deposit. To this line of cases may be added the case of Gordon, etc., v. Winneberger, 310 Pa. 362, which held that the Act of 1876, supra, imposing double liability upon the shareholders of banks of discount and deposit, did not apply to the holders of shares of title insurance and trust companies incorporated under the General Corporation Act of 1874, and the supplements thereto. In this last case, Judge Stern, writing a very thorough opinion for the court below (16 D. & C. 505), which was affirmed, said that Judge Sulzberger would have come to a different conclusion as to whether a trust company was doing a banking business if the Act of 1923 had then been in force.

What these cases decide is that the legislature has not abolished the distinction between the two classes of corporations, but they do not go to the extent of holding that trust companies do not do a banking business, as that term is generally understood.

In this respect the opinion of Judge Stern, in the case of Gordon, etc., v. Winneberger, supra, is illuminating. The lower court decided that double liability could not be imposed upon trust companies, but Judge Stern clearly demonstrated that that was quite different from saying

that trust companies were not doing a banking business. It was there held:

"1. A title insurance company incorporated under section 2, paragraph 19, of the General Corporation Act of April 29, 1874, P. L. 73, which has availed itself of the powers given by the Acts of May 24, 1881, P. L. 22, May 9, 1889, P. L. 159, May 29, 1895, P. L. 127, and June 1, 1907, P. L. 382, becomes, by the exercise of the powers conferred by the Act of May 9, 1923, P. L. 173, a company doing the business of a bank.

"2. It is not necessary, in order that an association or corporation be deemed a bank, that it exercise all the functions of a bank, but it may restrict itself to receiving moneys on deposit, to lending money on collateral or by means of discount on commercial paper, or to issuing bank notes payable to bearer." On page 510 Judge Stern said:

"We are, therefore, confronted for the first time with the problem as to whether or not title insurance companies incorporated under the General Corporation Act have, by virtue of the powers given to them by the Act of May 9, 1923, supplementing the series of enabling acts which preceded it, become 'companies doing the business of banks or loaning and discounting moneys as such.' In our opinion, they have become such companies.

"A bank is 'an association or corporation whose business it is to receive money on deposit, cash checks or drafts, discount commercial paper, make loans and issue promissory notes payable to bearer, called "bank notes:" ' 7 C. J. 473.

" 'The business of banking, as defined by law and custom, consists in the issue of notes payable on demand, intended to circulate as money when the banks are banks of issue; in receiving deposits payable on demand; in discounting commercial paper; making loans of money on collateral security; buying and selling bills of exchange; negotiating loans, and dealing in negotiable securities is-

sued by the government, state and national, and municipal and other corporations:' Mercantile Bank v. New York, 121 U. S. 138.

"It is not necessary, however, that a bank should exercise all of these functions. It may be a bank of deposit, which includes savings banks and all others receiving money on deposit; or it may be a bank of discount, which loans money on collateral or by means of discounts of commercial paper; or it may be a bank of circulation, which issues bank notes payable to bearer: 7 C. J. 474. Due to national legislation taxing the issues of state banks out of existence, such banks are now obliged to confine themselves to receiving deposits and discounting negotiable paper and to such additional powers as have been granted to them by legislation paralleling the powers given to trust companies.

"The court doubts whether the defendant can point out any power possessed by a bank of discount and deposit under the laws of Pennsylvania which is not possessed by title insurance companies incorporated under the General Corporation Act and enjoying the powers given to them by subsequent legislation. We are, therefore, of opinion that if the Act of May 9, 1923, had been in effect when the case of De Haven v. Pratt was decided in 1909, the court would there have arrived at a different conclusion. Indeed, as pointed out by Judge Sulzberger in that case, the very phraseology of the Act of May 11, 1874, indicates that the loaning and discounting of moneys was to be the decisive factor in determining whether a company was doing the business of a bank."

In our opinion, whether or not a trust company originally organized under the Act of 1874, which has accepted the Act of 1889 and its supplements, is doing a banking business, in view of the extensive general powers given to such companies by the Banking Code of May 15, 1933, P. L. 624, is hardly an open question. It is suggested that a distinction is maintained in the code because of the requirement as to name. The Banking Code requires, as

to corporations formed under it, if the corporation is to be only a bank the word "bank" must be in the title and if it is to be a bank and trust company, the words "bank and trust" must be in the title, but if it is to limit its activities only to what can be performed by a trust company or a savings bank, such appropriate word must be in the title. That does not affect the names of corporations theretofore formed which are given the powers therein set out in the code and which it is not necessary here to recount. It is sufficient to say that section 2 of the Banking Code provides, in part:

" 'Banking' means discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; receiving money and commercial paper on deposit or for transmission; lending money on real or personal security; buying and selling gold and silver bullion, foreign exchange, coin, or bills of exchange."

That is almost identically the same powers that were conferred on "every trust company" by the Act of 1923, supra.

There is another conclusive suggestion: Words in both constitutions and statutes must be interpreted as the ordinary man would understand them. It would come as a rather startling proposition to the ordinary man that, notwithstanding the number of trust companies in the City of Harrisburg, there are only two institutions doing a banking business, namely, Capital Bank & Trust Company, incorporated March 13, 1935, since the Banking Code of 1933 (City of Harrisburg v. Capital Bank & Trust Co., 48 Dauph. 83), and one National bank.

We are of opinion that, while trust companies may properly be differentiated from banks for certain purposes, the legislature did not intend to draw any such distinction when it authorized municipalities to impose a license tax upon "bankers."

And now, February 13, 1940, judgment is hereby directed to be entered in favor of plaintiff for $105, being $100 tax and $5 penalty. Exception to defendant.