## Commonwealth v. The Finance Company of Pennsylvania

*Roy J. Keefer, Hull, Leiby & Metzger, Samuel C. Harry* and *Morgan, Lewis & Bockius,* for appellant.

*Eugene J. Anastasia,* Deputy Attorney General, for Commonwealth.

LIPSITT, J., September 6, 1966.—The Finance Company of Pennsylvania (hereinafter called "appellant") has appealed from a decision of the Board of Finance and Revenue refusing a petition for review and sus-

taining the action taken by the Department of Revenue which imposed a bank shares tax [1] on the company's capital stock for the calendar year 1959. This proceeding was tried before this court on stipulated facts, a trial by jury having been waived pursuant to the Act of April 22, 1874, P. L. 109, 12 PS §688.

Appellant was organized by the Pennsylvania General Assembly by a Special Act of May 12, 1871, P. L. 787. Its original name, Improvement and Co-operative Company, was changed on May 12, 1873, to Long Island Company, and on June 13, 1877, to The Finance Company of Pennsylvania. Prior to and during the year 1959, appellant was engaged in three broad classes of business, i.e., the investment business, the real estate business and the business of receiving deposits and making secured loans.

For the year 1959, and for many previous years, appellant filed a timely Pennsylvania shares tax report and paid the Commonwealth bank shares tax.

On December 29, 1961, appellant, pursuant to the Business Corporation Law of May 5, 1933, P. L. 364, 15 PS §2852-1, et seq.; see section 3.B, 15 PS §2852-3, filed with the Department of State a certificate accepting the provisions of the Constitution of Pennsylvania and of the Business Corporation Law, and on the same date, pursuant to sec. 801 of the Business Corporation Law, 15 PS §2852-801, amended its charter. Subsequently, appellant has been taxed as a business corporation, and the Commonwealth concedes that it is no longer subject to any shares tax as imposed on banks and trust companies.

This litigation arises because appellant contends it should never have been subjected to the payment of a shares tax. It is argued that the nature of its activi-

---

[1] The denominations "bank shares tax" or "shares tax" are commonly used to designate the tax prescribed in the two statutes concerned in this suit.

ties was such that it was not the type of institution contemplated by the taxing statutes involved, and thus, it should have been taxed as a business corporation and not as a bank. The shares tax is imposed by two separate acts, the Act of July 15, 1897, P. L. 292, 72 PS §1931, and the Act of June 13, 1907, P. L. 640, sec. 1 et seq., 72 PS §1991. The classes of companies covered are described as banks or savings institutions by the Act of 1897, and as banks and trust companies and trust companies by the Act of 1907.

The relevant parts of the taxing statutes read as follows:

The Act of June 13, 1907, P. L. 640, sec. 1, as amended, et seq., 72 PS §1991:

". . . from and after the passage of this act, . . . every company organized as a bank and trust company or as a trust company under any Act of Assembly heretofore or hereafter approved, . . . shall, . . . make to the Department of Revenue, a report in writing, setting forth the full number of shares of the capital stock subscribed for or issued by such company, and the actual value thereof as of December thirty-first preceding, which shall be ascertained as hereinafter provided".

The Act of July 15, 1897, P. L. 292, sec. 1, as amended, 72 PS §1931:

". . . [F]rom and after the passage of this act, (1) Every bank or savings institution having capital stock, incorporated by or under any law of this Commonwealth . . . and located within this Commonwealth, shall, on or before the fifteenth day of April in each and every year . . . make to the Department of Revenue a report in writing . . . setting forth the full number of shares of the capital stock subscribed for or issued, . . . and the actual value thereof . . . which actual value shall be ascertained as hereinafter provided".

The charter of appellant, granted pursuant to the special act of the legislature, reads in part as follows:

"Section 2. That the said company shall have power to contract with companies, corporations and other parties in the construction, building and equipment of works and improvements, public or private, of whatever kind . . . and may purchase, lease, use, maintain and sublease the same. . . .

"Section 3. The same company shall have power to make purchases and sales or investments in the securities of other companies, and to make advances of money and of credit to other parties . . . and to receive and hold in trust, or otherwise, or as collateral, any estate or property, real, personal and mixed, including the notes, obligations and accounts of individuals, companies and corporations, and the same to purchase, adjust, collect and settle, and also to pledge, sell and dispose thereof on such terms as may be agreed on between them and the parties contracting with them. . . .

"Section 4. The said company shall have power to purchase, use and maintain any works or improvements connecting or intended to be connected with the works and improvements of the said company . . . and the said company shall only be taxable on the proportion of dividends on its capital stock, and upon net earnings or income only in proportion to the amount of business actually done by it within the state of Pennsylvania; and all its earnings or income derived from its business beyond the limits of the commonwealth shall not be liable for taxation".

The charter also provided in Section 1 that "nothing therein contained shall be so construed as to give to the said company any banking privileges of issuing their obligations as a currency".

The Commonwealth's position is based on the contention that the aforesaid charter gives the corporation all banking powers except that of issuing its

obligations as a currency, and accordingly, it may be properly classified as a bank or savings institution, as that term is used in the Act of 1897, or a company organized as a bank and trust company under any act of assembly, as that term is used in the Act of 1907.

Appellant delves at great length into the historical background of the corporation and contrasts with its charter the provisions of the charters of banks and trust companies organized by special acts of the Pennsylvania General Assembly. It also points out that it was given certain privileges and powers which have traditionally been denied to banking institutions. For example, banks have been limited in their power to invest in capital stock and real estate. See Banking Code of May 15, 1933, P. L. 624, as amended, 7 PS §819-1, et seq.; section 1009 of the Banking Code, 7 PS §819-1009. No such limitations appear in appellant's charter.

It cannot be denied that there is a certain verisimilitude in advancing an argument along these lines. Nevertheless, it is not essential to make a detailed comparison of bank and trust company charters with the charter of appellant. The real issue in this case cannot be found in this type of analysis, but rather in directing an inquiry into the question whether the legislature, in enacting the shares tax acts, intended to include appellant as a banking establishment within the purport of the statutes. If appellant is a banking institution within the meaning of one of these acts, then the tax was properly imposed. If, however, it was not properly such an institution, then the shares tax should not have been imposed.

Neither of the two acts define the word "bank" as it is used therein. The Commonwealth reasons that where a statute fails to define a term, the Statutory Construction Act of May 28, 1937, P. L. 1019, art. III, sec. 33, 46 PS §533, must be utilized. The act provides that:

"Words and phrases shall be construed according to

rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this act, shall be construed according to such peculiar and appropriate meaning or definition".

The Commonwealth argues that the term "bank" must be construed according to its common usage and quotes Webster's Third New International Unabridged Dictionary, which defines "bank" as follows:

". . . an establishment for the custody, loan, exchange or issue of money, for the extension of credit, and for facilitating the transmission of funds by drafts or bills of exchange; also: *an institution incorporated for performing one or more of such functions . . . .*" (Italics added.)

During the year in question, appellant had money on deposit and made secured loans. Thus, it is urged that it was an establishment for the custody of money and extension of credit and, hence, it was performing one or more of the functions in accordance with this definition. If, in the application of the Statutory Construction Act, the word "bank" has a technical meaning, i.e., it has acquired a peculiar or appropriate meaning, it must be so construed. Any technical interpretation becomes perplexing, because a "bank" is not delineated in the tax acts. Even the Banking Code of May 15, 1933, P. L. 624, art. I, sec. 2, as amended, 7 PS §819-2, used the word "bank" to depict a bank. The same act does define "banking" as the following activities:

". . . discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; receiving money and commercial paper on deposit or for transmission; lending money on real or personal security; buying and selling gold and silver bullion, foreign exchange, coin, or bills of exchange".

Although appellant did lend and receive money on deposit prior to and during the year 1959, appellant did not engage in discounting commercial paper, and its income was principally derived from its investment and real estate businesses. Indeed, for the year 1959, appellant earned a net income before taxes of $506,485.40, but only $1,803.61 of this amount was from interest on loans and deposits. The remainder of the company's income was acquired from its investment and real estate activities. During the year 1959, the value of appellant's shares employed in its banking activities was $1,380,382, and the value of its shares employed in non-banking activities was $10,912,294.

The most persuasive argumentation on behalf of appellant is that our Pennsylvania courts and the legislature itself have recognized that a company engaged in limited banking activities is not, solely by such reason, a banking institution. Unquestionably, the mere fact that a corporation does, or has been granted, the power to do certain things which banks may do, does not make it a bank: 9 C. J. S., Banks and Banking, §2 (1938).

Although there are no cases dealing with what constitutes a bank for purposes of the taxing Acts of 1897 or 1907, there are many cases holding that a company having the right to engage in some of the activities of banking, such as accepting money on deposit and making loans, is not necessarily a banking institution. In DeHaven v. Pratt, 223 Pa. 633 (1909), the court held that a trust company which received money on deposit and made loans was not a banking institution.

The Supreme Court approved the following portion of the lower court's opinion:

". . . in the legislative mind, the receiving of deposits and their loan on collaterals was not considered banking, or, at all events, had ceased so to be consid-

ered; that to the latter term a special and peculiar sense had attached; that before the establishment of the national banking system, *the distinctive points of banking were the discounting of commercial paper and the issue of bank notes;* that afterwards the latter feature was, for the time at least, eliminated, and that then *the sole peculiar characteristic of a state bank was the discounting of commercial paper*": 223 Pa. at page 640 (Italics added).

In affirming the decision, the court also said:

"Our courts have frequently defined what a bank, or banking institution, is within the meaning of the law, and what is meant by the legislative expressions 'doing a banking business,' or 'to engage in the business of banking,' but in no instance has it been held that a trust company, deriving its powers under a special act of assembly passed prior to the adoption of the new constitution, which did not, in express terms, confer banking privileges, or which was incorporated under the general corporation Act of April 29, 1874, P. L. 73, and the supplements thereto which, in equally express terms, denied the right of such company to engage in the business of banking, was a bank or banking institution, or company doing a banking business": Id. at page 649.

To the same effect is Media Title & Trust Co. v. Secretary of Banking, 289 Pa. 96 (1927), in which the Secretary of Banking contended that a trust company incorporated under the General Corporation Act of 1874,[2] as amended by the Act of 1889,[3] was a banking institution and, therefore, controlled by the Act of 1917,[4] prohibiting branch banking establishments. The court, in holding that the trust company was not a banking institution, said at pages 98-99:

---

[2] Act of April 29, 1874, P. L. 73.

[3] Act of May 9, 1889, P. L. 159.

[4] Act of July 28, 1917, P. L. 1235.

"He [Secretary of Banking] avers, however, that, by various later statutes, each of the two classes of corporations is vested with powers which it did not have when that case was decided, but which the other did have, until now, speaking generally, their powers are substantially the same. Hence he says plaintiff must now be considered as if it were a banking institution, and governed by the Act of 1917. It would be just as valid an argument to claim that, because of those recent statutes, banks are to be treated as if they were trust companies, and that the Act of 1917 is no longer applicable even to them. But, aside from this, the statutes relied on are enabling, and not disabling acts, and nothing in them even suggests an intention to make trust companies liable to the Act of 1917, or to place them, on the question of branches, in the class to which banking institutions belong".

And in Gordon, Secretary of Banking v. Winneberger, 310 Pa. 362 (1933), the court held that a trust company engaged in accepting deposits, making loans and discounting commercial paper was not a "banking institution" governed by the General Banking Act of May 13, 1876, P. L. 161, which imposed double liability upon shareholders of banks of deposit and discount. In its opinion, the court reviewed the statutory history covering "banking institutions" and trust companies having the authority to engage in banking activities, and concluded with the following statement:

"Is defendant liable under section 5 of the Banking Act of 1876? It is clear that in the general acts providing, on the one hand, for the formation of corporations with the powers specified in section 2, clause 9 and section 29 of the general corporation act, and supplements, and, on the other hand, for banks of discount and deposit under the Act of 1876, the legislature kept separate and apart the classes of corporations to be formed under each. . . .

"In our decisions referring to the subject, we have necessarily observed and adhered to the classification so established. The separation has been maintained with all its implications although the corporations receive deposits of money, and (in the last case) also discounted paper": 310 Pa. at 370-71.

Even more compelling than the court decisions is the course of action taken by the legislature in imposing the shares tax on various types of institutions.

The very purpose of the Act of June 13, 1907, P. L. 640, 72 PS §1991, was to tax trust companies, which engaged in the banking activities of accepting deposits and making loans, on the same basis as banks: [5] Commonwealth v. Mortgage Trust Company of Pennsylvania, 227 Pa. 163 (1910). In that case, the court held that the Act of 1907 was constitutional and was intended to tax "what are popularly known as trust companies". The court, in reviewing the legislative history of these companies and the policy of the State in taxing them, said at 174-75:

"What are known as trust companies are incorporated under the general corporation act of 1874, and the original purpose for which they were created was to engage in the business of title insurance . . . They grew in public favor until the legislature in 1895 conferred upon them the power to receive moneys on deposit and issue their obligations therefor, to invest their funds in and to purchase real and personal securities, and to loan money on real and personal securities. While these acts in express language denied to companies so incorporated the right to engage in the business of banking, they were in fact authorized to do some of the things for which banks are organized.

---

[5] The 1907 act originally referred to trust companies and title insurance companies. The amendment of May 31, 1933, P. L. 1132, added the phrase "bank and trust company or as a trust company", as recited in the statute set forth above.

It is true they are not banks of issue, nor of discount and deposit, in the technical sense, yet in the commercial world their transactions are regarded as in the nature of banking business. The policy of the commonwealth for more than twenty years was to tax the capital stock of these companies in the same manner as other corporations created under the general corporation act of 1874 were taxed. They made their reports to the auditor general under the general revenue acts of 1879, 1889 and 1891, and other statutes, just as other private corporations did, and the valuation of their capital stock was ascertained and the tax settlement made upon the same basis. This method of tax ing the capital stock of these institutions continued in force until the act of 1907 was passed. As the trust company business grew in magnitude, as it did grow after the passage of the act of 1895 which conferred quasi banking privileges, the question of the proper method of taxing the capital stock of these corporations frequently arose. It was contended in their behalf that banks were their natural competitors; that their business partook of the nature of banking; and that they should be taxed in like manner. As a result of this feeling and the agitation which followed it the act of 1907 was passed. It is apparent that the legislature intended to tax trust companies on the same basis as banks".

The 1907 act was passed, which subjected title insurance or trust companies to the shares tax, and in 1961, the Act of 1897 was amended (Act of February 21, 1961, P. L. 41, 72 PS §1931) to impose this tax on building and loan associations and Federal savings and loan associations. If the legislature had intended the shares tax act of 1897 to apply to *any* corporation carrying on the banking activity of receiving deposits and making loans, then it certainly would not have been necessary to pass the Act of 1907 and the amend-

ment in 1961 to include the above referred to organizations.

In stipulation of fact 30, it is acknowledged that, prior to and during the taxable year 1959, small loan companies, consumer discount companies, building and loan companies, insurance companies, and many business companies engaged in the business of making loans in Pennsylvania were not subject to the tax imposed by either the Act of 1897 or the Act of 1907.

It is unchallenged that appellant has been taxed as a bank, while other corporations operating under similar charters have been taxed as business corporations. The proposition advanced by appellant that the imposition of a tax on its shares violates the Fourteenth Amendment of the Constitution of the United States, and art. I, sec. 9 (Lack of Due Process) and art. IX, sec. 1 of the Pennsylvania Constitution (the Uniformity Clause) is not sustainable under the circumstances of this case. In these other instances where the charters are similar, the entities filed business corporation tax reports and were taxed as business corporations. The record is devoid of the extent of their banking functions, but there is nothing to indicate that these companies ever filed shares tax reports. To uphold this contention, appellant would have to show that the action of the Commonwealth was a deliberate and purposeful discrimination: Commonwealth v. Koppers Company, Inc., 397 Pa. 523 (1959). This appellant having filed shares tax reports, and thus *voluntarily* subjecting itself to the tax liability, it cannot be said there is a lack of uniformity.

It is apposite to the determination of this controversy, however, to review the tax treatment of corporations somewhat cognate to appellant. In 1950, and again in 1957, the taxing officials considered the proper method of taxing the Pennsylvania Warehousing and Safe Deposit Company. This organization was

chartered by a special act of the legislature and was granted the power to engage in both the warehousing business and the business of receiving money on deposit. Both in 1950 and in 1957, it was decided that the company should be taxed as a business corporation. The memorandum dated May 24, 1950, setting forth the taxing officials' decision, states that "the company is engaged in a warehousing and banking business and in order to avoid the possibility of losing its right to do a banking business, has insisted on filing shares tax reports covering its banking business and Capital Stock, corporate net income and corporate loans tax reports covering its warehousing business". The memorandum states that it was agreed that the company should be taxed as a general business corporation and that the "box number established by the department for the banking business should be cancelled and the shares tax paid on account should be transferred to the capital stock tax account".

The legal memorandum dated June 19, 1957, written by the Chief Counsel, Bureau of Corporation Taxes, Pennsylvania Department of Revenue, covering the tax liability of Pennsylvania Warehousing and Safe Deposit Company, states as follows:

"This corporation has the authority to and does actually engage in a limited amount of banking business. It is not, however, a bank within the meaning of the Act of July 15, 1897, P.L. 292, so as to be required to file tax reports and pay the tax required by banks under that Act. It is an ordinary business corporation which has special authority to engage in a limited amount of banking activity and should be taxed under the Capital Stock Tax Act".

Various improvement companies organized by special acts of the Pennsylvania General Assembly were granted the power and authority, inter alia, to make advances of money and of credit to other companies

and to receive and hold on deposit and in trust real and personal property, and were always taxed by the Commonwealth as business corporations. One such improvement company was Westinghouse Electric Corporation, which was organized under a special act in 1872, which granted it the same rights, powers, privileges, franchises as were granted to appellant under appellant's charter of 1871. Westinghouse operated pursuant to its original charter from 1872 until 1959, when it restated its articles pursuant to the Business Corporation Law. Westinghouse has always been taxed as a business corporation, and its shares have never been taxed under either the Act of 1897 or the Act of 1907.

Although it cannot be said that the settlements made by the Commonwealth with these other corporations, being at variance with appellant, amounted to an unconstitutional act because of the lack of uniformity, the manner in which they were taxed does counter the Commonwealth's theory that a corporation carrying on banking activities such as appellant is necessarily subject to the shares tax. The treatment of these other corporations strongly buttresses the argument of appellant that limited banking activities do not per se require the imposition of the bank shares tax. It cannot be categorically stated that appellant is a bank within the meaning of the shares tax statutes. Without some legislative action or judicial guidelines indicating this appellant should be subject to liability for the shares tax, it cannot be taxed as a bank, but should have been taxed as a business corporation.

Therefore, in accordance with this opinion, we make the following

## Conclusions

1. The Finance Company of Pennsylvania is not a banking and savings institution within the purview

of the Act of July 15, 1897, P. L. 292, which subjects its corporation shares to tax under said statute.

2. The Finance Company of Pennsylvania is not a company organized as a bank and trust company or as a trust company within the purview of the Act of June 13, 1907, P. L. 640, which imposes a tax on the shares of the corporation under the provisions of said statute.

3. The Finance Company of Pennsylvania is subject to the capital stock tax imposed on business corporations under the Act of June 1, 1889, P. L. 420, as amended.

We, therefore, make the following

ORDER

And now, September 6, 1966, judgment is entered in favor of The Finance Company of Pennsylvania, appellant; that its shares were not subject to tax during 1959 under either the Act of July 15, 1897, P. L. 292, or the Act of June 13, 1907, P. L. 640, and it is directed that the Department of Revenue and the Department of the Auditor General resettle the tax accordingly.