## Media Title & Trust Co. *v.* Peter G. Cameron, Secretary of Banking, Appellant.

*Trust companies — Branches — Secretary of banking — Acts of July 28, 1917, P. L. 1235, June 7, 1923, P. L. 498 and June 15, 1923, P. L. 809.*

1. Under existing laws, a trust company may establish branches in any part of the county where its chief operations are to be carried on.

2. A trust company is not a banking institution and is not limited, as such institutions are, by the provisions of the Act of July 28, 1917, P. L. 1235.

3. The secretary of banking has no power to declare the public policy of the State on the subject of branches for trust companies.

4. Neither section 2203 of the Administrative Code of June 7, 1923, P. L. 498, 628, nor sections 4, 20 and 21 of the Banking Act of June 15, 1923, P. L. 809, 811, 818, gives to the secretary of banking the power to limit trust companies, in the establishment of branches, to the municipality where its chief operations are carried on, if its business, as carried on at its branches, is properly conducted.

Argued January 3, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 12, May T., 1927, by defendant, from declaratory judgment of C. P. Dauphin Co., Commonwealth Docket, 1926, No. 54, for plaintiff, in case of Media Title & Trust Co. v. Peter G. Cameron, secretary of banking. Affirmed.

Petition for declaratory judgment. Before WICKERSHAM, J.

The opinion of the Supreme Court states the facts.

Judgment for plaintiff. Defendant appealed.

*Error assigned* was, inter alia, judgment, quoting it.

*Wm. Y. C. Anderson,* Deputy Attorney General, with him *George W. Woodruff,* Attorney General, for appellant.—Assuming an act of incorporation to be a contract between the State and the stockholders, the construction of such a contract is strict against the corporation and liberal in favor of the State. A corporation acquires no privilege, exemption or immunity under its charter except what is expressly and unequivocally given, and whatever is not expressly and unequivocally granted is taken to have been withheld: Bank v. Com., 19 Pa. 144; Packer v. R. R., 19 Pa. 218; Com. v. R. R., 27 Pa. 339; Pitts. & C. R. R. v. County, 63 Pa. 126.

*A. H. Hull,* of *Beidleman & Hull,* for appellee, was not heard.

OPINION BY MR. JUSTICE SIMPSON, March 21, 1927:

Plaintiff was incorporated under section 29 of the General Corporation Act of April 29, 1874, P. L. 73, 84, as amended by the Act of May 9, 1889, P. L. 159. Section 3 of the former statute provides that "The charter of an intended corporation......shall set forth...... III. The place *or places* where its business is to be transacted......[and] shall be acknowledged by at least three of the subscribers thereto before the recorder of deeds of the county in which the *chief operations* are to be carried on, or in which the *principal office* is situated." This necessarily implies that such corporations may have more than one place of business, and that only the place where its "chief operations are to be carried on" need be stated in the charter.

Plaintiff's amended charter provides that its "business......is to be transacted in the County of Delaware, Commonwealth of Pennsylvania, with its principal office in the Borough of Media in said county." In addition to this principal office, it has a branch office

"for receiving deposits and cashing checks......at 69th and Market Streets in the Township of Upper Darby," in the same county. The secretary of banking notified defendant to close the branch office, averring that its maintenance was "an unauthorized or unsafe practice." It was not averred that anything plaintiff did there was improper, but only that plaintiff could not, as against his objection, maintain a branch office at any place outside the municipality in which the principal office is located.

Plaintiff thereupon filed a petition for a declaratory judgment, asking that it be adjudged it had the right to maintain the branch office for the purpose stated; the secretary of banking answered, the case was duly heard, and a decree entered as prayed for. The secretary of banking thereupon appealed.

His contention is twofold; (1) That the supplementary Act of July 28, 1917, P. L. 1235, is now applicable to trust companies, and under it branches are not permitted elsewhere than in the "city, borough or township in which its principal place of business is located"; and (2) That, even if this is not correct, he has a statutory right to decide whether or not they may be located in any other place.

As to the first of these claims, he admits that, under De Haven v. Pratt, 223 Pa. 633, if it is still applicable, plaintiff is not a banking institution, and hence is not limited, as such corporations are, by the Act of 1917. He avers, however, that, by various later statutes, each of the two classes of corporations is vested with powers which it did not have when that case was decided, but which the other did have, until now, speaking generally, their powers are substantially the same. Hence he says plaintiff must now be considered as if it were a banking institution, and governed by the Act of 1917. It would be just as valid an argument to claim that, because of those recent statutes, banks are to be treated as if they were trust companies, and that the Act of 1917 is no longer applicable even to them. But,

aside from this, the statutes relied on are enabling, and not disabling acts, and nothing in them even suggests an intention to make trust companies liable to the Act of 1917, or to place them, on the question of branches, in the class to which banking institutions belong.

Defendant also seems to think that the constitutional amendment of November 2, 1920 (P. L. 1919, page 1238), in some way aids his contention on this point. It says "The General Assembly shall have the power by general law to provide for the incorporation of banks and trust companies and to prescribe the powers thereof." When the legislature desires to further limit the latter in the establishment of branches, or to put the two classes of corporations on the same plane, in respect to this matter, doubtless it will find apt words to convey its meaning; it suffices to say that neither in the statutes referred to, nor in the constitutional amendment, can there be found the slightest intention so to do.

Finally, it is said that by section 2203 of the Administrative Code of June 7, 1923, P. L. 498, 628, and sections 4, 20 and 21 of the Banking Act of June 15, 1923, P. L. 809, 811, 818, a discretion is vested in defendant to forbid the establishment or maintenance of branches, by trust companies and all the other corporations mentioned in the latter statute, whenever, in his judgment, such establishment or maintenance will result in "conducting business in an unauthorized or unsafe manner." To this we do not assent.

The Administrative Code simply provides that "The department of banking shall enforce and administer the laws of this Commonwealth in relation to all corporations and persons under its jurisdiction, and shall see that the greatest possible safety is afforded to depositors therein or therewith and to other interested persons." This clearly gives the secretary no power beyond that specified in the existing "laws of this Commonwealth," and, as we have shown, no prior statute gave him the right to prohibit a trust company from establishing

branches anywhere within the county where its principal office is situated.

Section 4 of the Banking Act but reiterates what is said in the Administrative Code. Section 20 is, however, somewhat broader in its scope. It provides that "Whenever it shall appear to the secretary that any corporation or person under the supervision of the department has violated any provision of this act or any law regulating the business of such corporation or person, or is conducting business in an unauthorized or unsafe manner, or that any such corporation has an impairment of capital, the secretary may issue an order, under his hand and seal of office, directing such corporation or person to discontinue such violation of law or such unauthorized or unsafe practices, or directing such corporation to make good, within a time of not more than sixty days after notice by the secretary, any impairment or deficiency of capital." Section 21 specifies the method of procedure, and authorizes the secretary to take possession of the business and property of any corporation or person, failing or refusing to comply with his requirements.

It will be noticed at once that the words "unsafe manner" are the only ones, in section 20, which give the slightest color of right to defendant's threatened action against this plaintiff, since there is no averment that it has violated any other statutory provision or otherwise conducted business in an unauthorized manner. Our question therefore is, is the mere maintenance of a branch, as authorized by law, an unsafe practice? We may assume that defendant thinks so, but that fact, standing alone, Is not one which the legislature has committed to him for determination. The statutory authorization to have such branches is not expressly repealed, nor is there any necessary implication that it was intended to be limited in the way stated. The legislature, which fixes the public policy of the State, has said there may be such branches; defendant says there may not

be, probably with no thought of assuming power he did not possess, but because of his misconstruction of the law, or, at most, because in his judgment the general policy of having them is an unsafe one. The legislature has not given to him, however, the right to declare what shall be the State's public policy on this point, or to repeal its enactments. We do not say that he may not, within appropriate limits, interfere with an erroneous doing of that which corporations, subject to his supervision, have power to do when done properly. Quite possibly, unconscionable salaries paid to an unnecessary number of officials, might be properly objected to by him, especially if thereby the capital of the corporation would probably be impaired, though, speaking generally, a corporation has the right to determine the number of its officers and the compensation to be paid to them. Perhaps his right to interfere may exist for other reasons, but we will determine these matters when they arise. What we now decide is that defendant cannot successfully misconstrue the law and base an alleged exercise of discretion thereon; nor can he, by the exercise of a so-called discretion, make for the State a public policy antagonistic to that enacted by its legislature.

The judgment of the court below is affirmed.