SAINT JAMES SAVINGS BANK OF BALTIMORE CITY *v.* KIRKWOOD, STATE BANK COMMISSIONER, ET AL.

[No. 95, October Term, 1954.]

*Decided January 19, 1955.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Herbert L. Grymes,* for appellant.

*W. Giles Parker,* Assistant Attorney General, for appellees.

DELAPLAINE, J., delivered the opinion of the Court.

The Saint James Savings Bank of Baltimore City, a mutual savings institution, brought this action in the Circuit Court of Baltimore City against William H. Kirk-

wood, Jr., State Bank Commissioner, and Edward D. E. Rollins, Attorney General of Maryland, to obtain (1) a judicial declaration that it has the power to establish branch offices in the counties of Maryland without the approval of the Bank Commissioner, and (2) an injunction restraining defendants from prohibiting it from establishing any branch offices in the counties of Maryland, particularly the office it contemplates in Parkville in Baltimore County.

The suit was brought under the Uniform Declaratory Judgments Act. There is no question that complainant had the right to invoke the Uniform Act. It provides that any person whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder. Code 1951, art. 31A, sec. 2.

Complainant alleged that it has an option to lease an office on Harford Road at Parkville, and that it has the power to establish and maintain a branch there. It further alleged that the State Bank Commissioner, relying on a ruling of the Attorney General, asserted that it has no power to establish a branch outside of the City of Baltimore.

Defendants filed a combined demurrer and answer to the bill of complaint. After a hearing on the bill, demurrer and answer, and stipulation of counsel, the Court dismissed the bill. Complainant appealed from that decree.

In 1870 the Legislature enacted the first general law prescribing the method by which a banking institution could be established "in their now locality, or any other within the State." Laws 1870, ch. 206. It was not until 1910, however, that the Legislature, in re-enacting Article 11 of the Code entitled "Banks and Trust Companies," created the office of State Bank Commissioner, and made provision for the regulation and supervision

of all banks, trust companies and savings institutions in Maryland. Laws 1910, ch. 219.

During the next ten years there was no express statutory authority for branch banks in Maryland. In 1916 Bank Commissioner Downs asked Attorney General Ritchie for an opinion on the power of State banks to establish branch banks under the general law. In his reply, 1 Opinions of the Attorney General 28, Mr. Ritchie pointed out that some of the provisions of the State Bank Law seemed to imply the power of banks to have branches, while others did not. He said that in the absence of any decision on the question he was unable to advise with certainty which view the courts would take. He then offered the following suggestion:

"As a practical matter, however, I do not think that your Department is necessarily called upon to take a position upon this disputed legal question which will be adverse to the power of the banks to establish branches as many of them have done for years, without any express authority in their charters, but with the full knowledge and acquiescence of the state authorities.

"The principal object of your Department is for the protection of the depositors and the public who deal with the banks, and if you see that the banking laws, which aim to accomplish this, are faithfully complied with, then I see no reason for your Department to take the position that the banks shall not maintain branches, when it is by no means clear that they cannot legally do so, and when there is at least as much to be said in favor of the view that they can, as in favor of the view that they cannot."

The doubt was removed by Chapter 268 of the Laws of 1920. That Act directed that any bank or trust company which shall establish any branch outside of the city, town or village in which it is located shall add to its capital stock in the amount prescribed according to

the population of the community, unless the paid-in capital of the bank or trust company is already sufficient to provide the capital required by a bank doing business in the city, town or village in which it is located and for branches in cities, towns or villages in which it proposes to establish branches. Code 1951, art. 11, secs. 28, 53.

In 1924 the Legislature tightened the Bank Law by Chapter 266 of the Laws of 1924, which inserted the following provisos in Sections 20 and 42 of Article 11 of the 1912 Code, codified in the 1951 Code as Sections 28 and 53:

"* * * provided, however, that no branch shall hereafter be established by any bank, in the city, town or village, where said bank is now located, until said bank conforms to the requirements herein provided, as to the minimum amount of capital stock for banks in said city, town or village."

"* * * provided, however, that no branch shall hereafter be established by any trust company in the city, town or village where said trust company is now located and engaged in business, until said trust company conforms to the requirements herein provided as to the minimum amount of capital stock for a trust company in said city, town or village."

In *Weer v. Page,* 1928, 155 Md. 86, 141 A. 518, the appellants brought suit for an injunction against Bank Commissioner Page, who had refused to approve a charter for a State bank in Sykesville. The Bank Commissioner felt that it would not be expedient to grant the charter because he thought there was no need for a bank there and it would not have a reasonable chance for success. He relied on the provision that the Bank Commissioner shall ascertain whether the character, responsibility and general fitness of the persons named in the certificate of incorporation are such as to command confidence and warrant belief that the business of the proposed corporation would be honestly and efficiently con-

ducted, and whether the public convenience and advantage would be promoted by allowing such corporation to engage in business. Code 1924, art. 11, sec. 22, Code 1951, art. 11, sec. 30. It was held by this Court that this section of the Bank Law supplied sufficiently definite standards for the approval or refusal of a charter, and that the fact that it did not apply to private banks or the establishment of branch banks by existing corporations did not render it invalid.

At its regular session in 1933 the Legislature tightened the law relating to mutual savings institutions. It repealed and re-enacted Section 20 of Article 11 of the 1924 Code, codified in the 1951 Code as Section 28, which prescribes the amount of capital and surplus required for parent and branch banks. It expressly provided that for the purposes of this section the term "bank" shall include savings institutions having capital stock.

At the extra session in 1933 the Legislature tightened the law relating to banks and trust companies, Chapter 23, codified as Section 65 in the Code of 1951, provides that any bank or trust company organized under the laws of Maryland shall have the power to establish and operate a branch or branches in the city or county in which it is located or at any point within the State "after having first obtained the approval of the Bank Commissioner." It then provides that the approval of the Bank Commissioner "may be given or withheld in his discretion, and shall not be given until he shall have ascertained to his satisfaction that the public convenience and advantage will be promoted by the opening of of any such branch or branches, and that said bank or trust company has complied with the other terms and conditions prescribed by this Arictle." However, this Act applies only to banks and trust companies, and does not apply to mutual savings institutions.

It was in 1935 that the Legislature passed the Act upon which defendants now rely. Laws 1935, ch. 498, Code 1951, art. 11, sec. 40. This Act provides as follows:

"No savings institution or savings bank hereafter incorporated shall have any capital stock, but shall be a mutual association. With the approval of the Bank Commissioner, any mutual savings institution shall have the right and authority to establish in the same city, town or village and maintain branches where its guarantee fund equals the minimum requirement as to capital of State banks in the same locality."

This Act came before the Court of Appeals for construction in 1954 in *Kirkwood v. Provident Savings Bank of Baltimore,* 205 Md. 48, 106 A. 2d 103. It there appeared that the Provident Savings Bank was authorized by an Act of the Legislature in 1888 to establish "a central office in the city of Baltimore, and branches in said city and in the counties of the State of Maryland." Laws 1888, chs. 69, 245. In that case we decided that the Legislature had not abrogated or reduced Provident's charter power to establish branch banks anywhere in the State of Maryland.

A somewhat similar question arose in *Media Title & Trust Co. v. Cameron,* 289 Pa. 96, 137 A. 129. The trust company in that case had been authorized to transact business anywhere in Delaware County, Pennsylvania, with its principal office in the borough of Media. The trust company had been operating a branch office in the township of Upper Darby in Delaware County. The Secretary of Banking of Pennsylvania ordered the trust company to close the branch office. He contended that, under an Act passed by the Legislature of Pennsylvania in 1917, no trust company could lawfully maintain any branch office elsewhere than in the city, borough, or township in which the principal office is located. The Supreme Court of Pennsylvania, however, upheld the right of the trust company to continue to operate its branch. Justice Simpson, speaking for the Court, said:

"The statutory authorization to have such branches is not expressly repealed, nor is there any necessary implication that it was intended

to be limited in the way stated. The Legislature, which fixes the public policy of the state, has said there may be such branches; defendant says there may not be, probably with no thought of assuming power he did not possess, but because of his misconstruction of the law, or, at most, because in his judgment the general policy of having them is an unsafe one. The Legislature has not given to him, however, the right to declare what shall be the state's public policy on this point, or to repeal its enactments. We do not say that he may not, within appropriate limits, interfere with an erroneous doing of that which corporations, subject to his supervision, have power to do when done properly. * * * What we now decide is that defendant cannot successfully misconstrue the law and base an alleged exercise of discretion thereon; nor can he, by the exercise of a so-called discretion, make for the state a public policy antagonistic to that enacted by its Legislature."

The Saint James Savings Bank of Baltimore City succeeded the Saint James Savings Institution of Baltimore City, which was organized under the laws of Maryland in 1878 with authority to carry on its operations "in the City of Baltimore in the State of Maryland." The present corporation was formed in 1884 under the name of the Saint James Savings Fund of Baltimore City. The certificate of incorporation provided "that its operations are to be carried on in the State of Maryland and that its principal office will be located in the City of Baltimore." The name of the corporation was subsequently changed to the Saint James Savings Bank of Baltimore City.

As we have seen, branch banking was carried on in Maryland for some years before it was given the express approval of the Legislature in 1920. Appellant's charter was approved by one of the Judges of the Supreme Bench of Baltimore City in 1884. The charter

required its "principal office" to be located in Baltimore, but authorized it to conduct its operations anywhere in the State of Maryland. It is clear that appellant, under the broad language of its charter authorizing it to carry on its operations "in the State of Maryland" with its principal office in Baltimore, has the power to establish branches in the counties as well as in Baltimore.

This has always been the understanding of appellant's officers. It was the interpretation they placed upon it 55 years ago. Obviously they had no doubt of appellant's power to operate branches anywhere in the State of Maryland, because they opened a branch office in 1900 at the corner of Fait Avenue and Bouldin Street, which was then located in Baltimore County. Nine years later the office was moved from that location to 3401 Eastern Avenue, which also was in Baltimore County. This branch is still being operated at that location, although it is now in Baltimore City, having been brought within the city limits by the Baltimore City Annexation Act of 1918. Laws 1918, ch. 82. During the entire period of 18 years when the branch office was located in Baltimore County, no State official, or any other person so far as we are aware, ever questioned appellant's right to operate this office beyond the city limits of Baltimore.

As we found in the case of the Provident Savings Bank, we likewise find here that there is no repugnancy between the charter of Saint James Savings Bank and the Act of 1935. The title of the Act gave no notice of any change in the State Bank Law except the re-enactment of one section for the purpose of "authorizing mutual savings institutions to establish and maintain branches under certain conditions." The title gave no notice of any intention to abrogate or reduce the charter power of any mutual savings institution.

For the reasons stated we find it necessary to reverse the decree dismissing the bill of complaint. We will remand the case to the Court below for the passage of a decree (1) declaring that appellant has the power to establish branch offices in the counties of Maryland with-

out the Bank Commissioner's approval and (2) granting the prohibitory injunction sought by appellant against the Bank Commissioner and the Attorney General.

*Decree reversed and case remanded for the passage of a decree in accordance with this opinion, with costs.*